Gay vs. Fretwell.

---

JOHN M. GAY *vs.* THOMAS FRETWELL, Appellant.

APPEAL FROM CIRCUIT COURT, BADAX COUNTY.

Heard July 20.]                    [Decided August 2, 1859.

*Evidence—Partnership—Lien—Reputation.*

It is not competent to prove by a witness, in what manner and in whose name business was conducted, after F. went into possession of a mill, and thus show a partnership between F. and G.; if the transactions offered to be proven relate to a time after G. had left the premises and the state, as that

Gay vs. Fretwell.

would be allowing F. to make his own acts evidence in his favor; but if G. were about the mill and attending to its business, he would have been presumed to have known of F.'s acts and declarations, and then the evidence would have been admissible, because G. might then have contradicted them if not true.

It is not competent to prove a partnership by general reputation in the neighborhood where the business is carried on, unless the party sought to be charged is in the same neighborhood, and may be presumed to know of this reputation, and how the business is conducted.

When F. claimed to hold logs and lumber as survivor of the firm of G. & F., he must rely on that claim alone, and cannot, on the trial, set up a claim by way of lien, for advances made upon the logs and lumber, nor rely on any other claim which is not made in the answer; and the court should refuse to give an instruction to the jury, that F. was entitled to hold by way of such other lien.

This was an action in the nature of replevin, brought to recover the possession of personal property. On the 22d day of June, 1858, the summons and an affidavit for the delivery of personal property, were issued to the sheriff of Badax county. The affidavit set forth in substance that John M. Gay, plaintiff, as the administrator of James D. Gay, deceased, was entitled to the possession of about seventeen hundred pine saw logs in the Kickapoo river, in Badax county; that James D. Gay was the owner of the same in his lifetime, and that the alleged cause of detention of said logs was that the estate of James D. Gay was indebted to the defendant, Thomas Fretwell, in a certain sum, and that the defendant had a right to take and detain said logs until he could saw therefrom enough lumber to pay the debt; and containing also the usual averment that the property was not taken for a tax assessment or fine pursuant to statute, or under an execution or attachment, &c., and alleging the property to be of the value of three thousand dollars.

On the 27th of July, 1858, the sheriff made return that he, on the 5th day of July, seized and replevied eleven hundred and eighty-six pine saw logs, marked as follows, to wit: "III," and upon the defendant Fretwell's giving bond as required by law, he had delivered the same to him. The complaint filed was in the usual form under the code.

The answer of the defendant admitted the ownership of the logs in James D. Gay in his lifetime; that they were in the river, and marked "III," and then denied that the admin-

istrator ever become possessed of them, nor had he inventoried them or returned them as the property of the estate as he was required to do ; denied that the logs were unlawfully detained, or that the plaintiff was entitled to the possession of the same. He further answered, that in September, 1857, he entered into co-partnership with James D. Gay, in the business of manufacturing lumber, and in cutting, hauling and running or driving saw logs from which to manufacture lumber; that such co-partnership was called and known by the firm name and style of Gay & Fretwell, and the places of doing business by the firm, were at Gay's saw-mill, in the county of Crawford ; also in the pinery on or near the Kickapoo river, in the county of Badax, and down and along the river from the pinery ; that by the terms of the co-partnership, the defendant was to have the care, management and supervision of all the partnership business, the getting out and running of logs from the pinery included ; and, after paying for the labor employed, provisions furnished, and expenses incurred in and about the partnership business from the avails thereof, Gay and the defendant, as such co-partners, were equally to divide the profits and losses of the business.

That, in pursuance of the terms of the co-partnership, the defendant, in the month of October, 1857, commenced furnishing and forwarding supplies to the pinery, for the use of laborers employed in the business of cutting and hauling logs for the firm ; and in the month of November of that year he entered into and took possession of all the co-partnership business, and undertook the care and management of the same, and continued to furnish supplies and laborers through the winter of 1857 and 1858, for the purpose of carrying on the business of the firm in the pinery ; that the defendant, after the death of James D. Gay, continued to carry on the business of the co-partnership at the request of the plaintiff, for the purpose of preventing the loss and damage to the same which would necessarily have resulted to the business had the same been sudddenly discontinued at the time of James D. Gay's death ; and that the logs described in the plaintiff's complaint, and which have been taken by the sheriff of Badax by virtue of the plaintiff's claim and requirement in this action, are the identical logs cut, hauled and got out in the pinery, by the said co-partnership firm of Gay & Fretwell, in the carrying on of the business of the firm ; and the defendant is entitled to the possession of the logs, and claims the

same as the joint owner thereof with James D. Gay and his estate, and as the survivor of James D. Gay.

On the trial the plaintiff read his letters of administration, and proved that the logs were cut upon the land of James D. Gay, by Gay's order, and that he paid the men for their work; that the logs were in the possession of the witness till June, 1858, when Fretwell came and took possession of them.

The defendant then called witnesses to prove that Gay had said in his lifetime that he had sold out one half of his interest in the mills, to the defendant, and that from that time Fretwell was to conduct and manage the business for Gay; that Fretwell went into possession of the premises and conducted the business from that time forth until April, 1858; that Fretwell had furnished part of the provisions for the men while cutting the logs, and the teams; that he had paid to Gay in his lifetime $200, and other small sums at different times, as part payment for the half interest purchased in the mills.

The defendant, when J. H. Brightman, a witness, was on the stand and testifying, offered to prove by said witness how the business was conducted, and in whose name, after the defendant went into the possession of the mill, property and premises, and after Fretwell had taken Gay over to Iowa, where he died without having returned to the mill; to which offer the plaintiff objected, and the court sustained the objection and refused to allow the testimony to be given to the jury. And the defendant, to maintain the issue, still further on his part, recalled a witness, Langdon, and by him offered to prove what the general report was concerning Gay and Fretwell being partners in the lumber and mill business, in the neighborhood where the mill was situated at the time, and whether the witness and others had dealt with Fretwell as the reputed partner of J. D. Gay, now deceased, after Fretwell took possession of the mill, &c., to which evidence the plaintiff objected, and the court sustained the said objection and ruled out the said testimony. The evidence on the part of the defendant and the rebutting of the plaintiff further showed in substance that the only conversations of Gay, deceased, with the witness Langdon was in the last of November, 1857, when the defendant was removing him to Iowa; that Gay & Fretwell said that the articles of agreement were not yet drawn, but would be at Prairie du Chien, if Gay was able; that the only conversation witness Pelton had with Gay

on this subject, was at Prairie du Chien when Fretwell was removing him to Iowa; that in that conversation Gay said he was about to make a trade with Fretwell; that Fretwell, at the same conversation, in the presence of Gay, told witness that they should complete the arrangement and draw the articles when they got to Garnavillo, in Iowa, if Gay was able, but that he was then too much fatigued to talk about it; that the two hundred dollars alleged to have been paid by Fretwell to Gay, was paid to this witness at this conversation; this was about the 23d or 24th of November, 1857; that a note was given by James D. Gay to Fretwell at the house of John M. Gay, at Garnavillo, on or about the 26th of November, 1857, for $400 00, money loaned and advanced, and that the articles of agreement were not drawn; and that this was the last time that Gay and Fretwell ever met; that Fretwell told the witness, Tallman, in January, 1858, that he had not gone into partnership with Gay and thought he should not, because there were more debts than he supposed; that Fretwell told a person seeking employment at the mill after the death of Gay, that if he wanted employment he must work by the day or month as he, Fretwell, did; and John Fretwell testified he was the only man employed by his father in logging; that after the death of Gay his father made out his, John's, account for his services, against the estate of Gay alone, and directed him to file it in the probate office, as a claim against the estate. And it further appeared in evidence, that two of the men employed called upon the defendant while he was at the mill for a settlement, and he told them he had nothing to do with the matter, that they must look to the estate; that all the men employed had settled with the administrator or filed accounts against the estate; that Charles Myer applied to Fretwell for supplies for the pinery, and that he replied that he had nothing to do with the property or he would have sent supplies long ago, and that he, Myer, must go to John M. Gay; that witness Wait delivered some other logs at the mill in the spring of 1858, while Fretwell was there, and requested him to take care of them, and he replied that he had nothing to do there, and he did not care what became of the logs; that after Fretwell had removed Gay to Iowa, he, Fretwell, returned to the mill and remained in charge thereof until April, 1858, when he moved therefrom, leaving the same in the possession of the administrator; that he was appointed and acted as one of the appraisers of the

estate, and delivered the possession of part of the property to the administrator, and at the time made no claim of a partnership, lien or other interest; that while he was in charge of the mill he received money for lumber, and paid wages and other debts in lumber, and that the mill was in Crawford county, six miles below Billings' Creek.

And after the evidence was closed on both sides, the court was asked, among other things, to instruct the jury on the part of the defendant, that if the jury believed, from the evidence in this case, that Wait had possession of these logs as security for his pay in getting in the logs under an arrangement with James D. Gay and John M. Gay, or that Wait had a right to the possession of those logs that had never been surrendered up to the plaintiff; that then and in that case, they must find for the defendant; and also to instruct the jury that if they believed, from the evidence in this case, that that the defendant had made advances for the purpose of cutting, running and hauling these logs, and had bestowed labor in cutting and hauling the same, and had the possession of them at the time this suit was commenced, he had a lien upon them under the law and was entitled to the possession until paid, and that in that case the jury must find for the defendant. All which special requests and instructions the court refused to give to the jury, as requested by the defendant, without qualification. But the court went on to say and charge the jury, that if Wait had such an adverse possession of the logs as against the plaintiff, as that the latter had neither actual or constructive possession of them at the time of the taking, then the plaintiff could not recover. And as to the second request refused, the court said that if the defendant had performed manual labor upon the logs, or in getting them out, and had actual possession before the taking, and had never relinquished that possession before the taking, that then the defendant would have a lien if there was any sum due to him; but no such defense was embraced in the issue.

The jury found for the plaintiff, and judgment was rendered accordingly; and the defendant appealed to this court.

*W. H. Tucker*, for the appellant.

*Hutchinson & Merrill*, for the respondent.

Gay vs. Fretwell.

*By the Court,* COLE, J.   We are of the opinion that the circuit court very properly refused to permit the appellant to prove, by the witness, Brightman, in what manner and in whose name the business was conducted, after the appellant went into possession of the mill property, since all these matters related to a time after Gay had left the premises, and even that part of the country, and had gone to the state of Iowa, whence he never returned   Now had Gay been about the mill giving his personal attention to the business, and where he would have known of the acts and declarations of the appellant, and of his manner of conducting the business, there might be some reason for holding that the evidence offered was admissible for the purpose of establishing a partnership between the parties.   For then it might, with some force of reason, be contended that if Gay knew that the appellant was making these declarations in reference to his being a partner, &c., and that the appellant was conducting the business as though a partnership really existed between them, yet did not contradict the assertions thus made, nor change the method of doing the business, but acquiesced in it; that it was fair to presume that he would not have done so unless the partnership had in fact existed.   But this was not the case.   Gay could know nothing about the fact that the appellant was holding himself out as his partner, and certainly had no means of knowing how the appellant conducted the business, and therefore to permit the appellant to give this evidence to establish the partnership, was simply enabling him to manufacture testimony for himself.   In other words, it was permitting him to give his own unsupported declarations and acts in evidence, in his own favor, to prove a partnership, which wonld be in violation of the plainest and most wholesome rules of evidence.

It was suggested by the counsel for the appellant that this

evidence ought to have been admitted, since it was the best which could be given to establish the fact of partnership. It might perhaps be the best evidence in the appellant's power to offer; but still that is no reason why he should not be required to make out his case by legal and competent testimony.

These same observations equally apply to the ruling of the circuit court, excluding the testimony of the witness Langdon, by whom the appellant offered to prove what the general report was as to Gay and he being partners in the lumber and mill business, in the neighborhood where the mill was situated, even if general reputation were admissible in evidence, in aid of other testimony to prove a partnership, which proposition we do not wish to be understood as affirming. See *Scott vs. Blood*, 16 Maine R., 192; *Tuttle vs. Cooper*, 5 Pick., 514; *Robbins vs. Willard et al.*, 6 id., 464; *Whitney vs. Ferris*, 10 J. R., 66; *Sweeting et al. vs. Turner*, id., 216; *Smith vs. Griffith*, 3 Hill, 333. Yet this obviously should relate to a time when Gay was in the neighborhood and having some personal knowledge of the business and of those matters which went to create the impression on the mind of the public that they were partners.

The only other question remaining necessary to be noticed, is as to the correctness of the ruling of the circuit court in refusing to give the second special instruction asked for on behalf of the appellant. By that instruction the court was requested to charge the jury that, if they believed from the evidence in the case, that the appellant had made advances for the purpose of cutting, running and hauling these logs, and had bestowed labor in cutting and hauling the same, and had the possession of them at the time the suit was commenced, that then he had a lien upon them under the law, and was entitled to the possession, until his lien was discharged. The court gave this instruction substantially, but

stated to the jury that no such defense was set up in the answer or embraced in the issue.

In his answer the appellant claimed to hold possession of the property in controversy, as surviving partner of the firm of Gay & Fretwell. He set up no claim to the possession of such property because he had made advances upon it, or bestowed labor upon it. If he relied upon his lien upon the property he should have laid the foundation for his proof in his answer and framed it accordingly. But to permit him, after failure in his case, as set up in his answer, to change his position and insist upon his right to hold the possession of the property on some other ground, of which he had given no intimation in his pleading, would naturally take his adversary by surprise, and might work the greatest hardship. We therefore think the circuit court might have refused to give this instruction at all, as being irrelevant to the issue being tried.

We think the judgment of the circuit court should be affirmed.