[Sac. No. 1021.   Department One.—March 16, 1904.]

J. T. SUMMERVILLE, Appellant, v. STOCKTON MILLING COMPANY et al., Respondents; W. J. HERSOM, Trustee of Estate of J. D. Stuart, Bankrupt, Appellant.

142 529
f144 157
f144 161
142 529
146 742
146 743

LANDLORD AND TENANT — ESTATE FOR YEARS — PERSONAL PROPERTY— JUDGMENT-LIEN—SALE UNDER EXECUTION.—A leasehold estate for a term of years is personal property at common law. The common-law rule has not been changed in this state, and an estate for years is not subject to the lien of a judgment upon real property, and no lien can be acquired thereupon under a

CXLII. Cal.—34

judgment until levy of execution, or, if there is no levy, a sale under execution takes effect from its date, or, at all events, not prior to the notice of sale.

ID.—PRIORITY OF CHATTEL MORTGAGE OF GROWING CROP.—A chattel mortgage upon the growing crop duly executed by the lessee to the lessor, and recorded prior to any levy upon or notice of sale of the leasehold estate for years under execution, takes precedence of the sale, and confers a superior right to that of the purchaser.

ID.—WAIVER OF LIEN—CLAIM OF ABSOLUTE OWNERSHIP.—In general, if one having only a lien is sued in replevin, and answers, claiming absolute ownership, his lien is lost, and he will not be permitted upon the trial to assert any right as lienor.

ID.—CLAIM AND DELIVERY BY EXECUTION PURCHASER—ANSWER BY CHATTEL MORTGAGEE—MORTGAGE LIEN NOT WAIVED.—In an action of claim and delivery for the crop by the execution purchaser against the chattel mortgagee, a denial of the ownership or right of possession of the purchaser, and of defendants' wrongful taking or withholding of possession, does not aver that the chattel mortgagee is the absolute owner of the wheat, and does not show a waiver of the mortgage lien as against the plaintiff.

ID.—CROSS-COMPLAINT BY TRUSTEE OF BANKRUPT LESSEE—INCONSISTENT DEFENSES—OWNERSHIP OF CROP—CHATTEL MORTGAGE—FINDINGS— WAIVER.—Where a cross-complaint in the action of claim and delivery was filed by the trustee in bankruptcy of the lessee of the term for years, and inconsistent answers thereto were filed by the chattel mortgagee, one alleging ownership of the crop, and the other setting up the rights of a chattel mortgagee, and the court found that on the trial the chattel mortgagee only claimed under the mortgage the right of possession of the three fourths of the crop mortgaged by the lessee, until the mortgage debt should be paid, the facts do not establish a waiver of the lien as against the cross-complainant, especially where the chattel mortgagee was not required to answer the cross-complaint.

ID.—TAKING POSSESSION OF LEASED LAND—RIGHTS UNDER MORTGAGE AND LEASE.—Where the debts were due when the chattel mortgage was executed, the covenant to pay them was broken as soon as made, and if the mortgage conferred a right of possession upon breach of that covenant, and also contained an independent covenant that the mortgagee might enter to view the crop and take any measures necessary for the protection of the crop or his interest therein, and the lease gave the lessor the title to the crop until harvested, the taking of the land by the chattel mortgagee, who was also lessor, before the crop was ready for harvesting was not a conversion of the crop nor a repudiation of the lien of the mortgage.

ID.—TAKING POSSESSION OF HARVESTED WHEAT BY MORTGAGEE—STORAGE IN WAREHOUSE—CONVERSION.—Where the mortgage conferred power upon the mortgagee to take possession of the wheat when

it was harvested, and he did not claim otherwise than under the mortgage, the fact that he took possession of the harvested wheat and stored it in a warehouse, where it still remained, did not show a conversion or extinguishment of the lien of the mortgage under section 2910 of the Civil Code.

ID.—REMOVAL OF CROP FOR BETTER SECURITY.—The removal of the wheat from the land on which it was grown, for the better security of the chattel mortgagee, did not impair the lien. The provision of section 2792 of the Civil Code for the continuance of the lien after severance of the crop from the land so long as it remains on the land of the mortgagor, has no application to prevent such removal by the mortgagee.

ID.—MOTION FOR JUDGMENT ON PLEADINGS—DENIAL OF CAPACITY OF TRUSTEE IN BANKRUPTCY.—A motion by the trustee in bankruptcy of the lessee, as cross-complainant, for judgment on the pleading was properly denied, where issue was raised upon the averment that he was "the duly elected, appointed, qualified, or acting trustee" of the bankrupt estate.

ID.—CHATTEL MORTGAGE NOT AN UNLAWFUL PREFERENCE.—The chattel mortgage was not an unlawful preference in violation of the provisions of the Bankruptcy Law, where the evidence does not show that the mortgagee knew or had reasonable cause to believe that the lessee was insolvent within the meaning of the present Bankruptcy Law, or that he intended thereby to give a preference to the mortgagee, but the transaction implies the contrary.

ID.—NOTICE OF JUDGMENTS AGAINST MORTGAGOR.—The chattel mortgagee did not have constructive notice of judgments against the mortgagor, when the chattel mortgage was executed, so as to charge him with the knowledge of the mortgagor's insolvency, where he had no actual notice of such judgments.

ID.—SUFFICIENCY OF ANSWER TO CROSS-COMPLAINT—AVERMENTS AS TO CHATTEL MORTGAGE—EVIDENCE UNDER DENIAL.—The fact that the answer of the chattel mortgagee to the cross-complaint of the trustee in bankruptcy merely averred that the chattel mortgage was duly recorded in the county where the land is situated on which the crops were grown, but did not allege that the mortgagor resided in that county, is not material where the cross-complaint was addressed only to another defendant, and did not require an answer by the chattel mortgagor, whose right to judgment is based upon the complaint and answer. But, assuming that the answer was required, the defendant was entitled to prove a valid chattel mortgage, under the denial of the alleged right of possession of the lessee, and of the cross-complainant as his trustee in bankruptcy, and it was not necessary specially to plead the mortgage.

ID.—COSTS AGAINST TRUSTEE IN BANKRUPTCY.—The trustee in bankruptcy is not legally injured by a judgment against him for costs incurred in defeating his claim by way of cross-complaint, and he

cannot object to judgment for costs against him and the plaintiff, in favor of the other defendants, on the ground that he is a co-defendant.

APPEALS by plaintiff and cross-complainant from a judgment of the Superior Court of San Joaquin County, and from separate orders denying a new trial to each. Edward I. Jones, Judge.

The facts are stated in the opinion of the court.

T. G. Elliott, D. E. Alexander, and J. B. Webster, for Plaintiff-Appellant.

A lease for a term of years is a grant of an estate in the land, and is real property. (Civ. Code, secs. 755, 761, 765, 1215, 2947; *Pacific Coast Steamship Co.* v. *Kimball,* 114 Cal. 414, 417; *Commercial Bank* v. *Pritchard,* 126 Cal. 600; *McLeod* v. *Barnum,* 131 Cal. 605; *McKee* v. *Howe,* 17 Colo. 538; Boone on Real Property, sec. 81; *First Nat. Bank* v. *Bennett,* 40 Iowa, 537; *Loring* v. *Melendy,* 11 Ohio, 355.) The crops passed with the sale of the realty. (Civ. Code, sec. 819; *Farnum* v. *Hefner,* 79 Cal. 575,[1] *Huerstal* v. *Muir,* 64 Cal. 450.)

C. H. Fairall, and H. R. McNoble, for Cross-Complainant-Appellant.

The chattel mortgage by the lessee to the lessor was a fraudulent preference under the Bankrupt Law. (*Kohlsaat* v. *Hoguet,* 5 N. B. R. 159; Fed. Cas. 7919; *In re Lewis,* 2 N. B. R. 145.) The lien of the chattel mortgagee was waived by a wrongful conversion of the property, and by an inconsistent claim of ownership. (Civ. Code, sec. 2910; Jones on Liens, sec. 1019; Wells on Replevin, sec. 381; *Lehmann* v. *Schmidt,* 87 Cal. 15-21; *Sutton* v. *Stephens,* 101 Cal. 545; *Williams* v. *Ashe,* 111 Cal. 184; *Chase* v. *Putnam,* 117 Cal. 315; *Mexal* v. *Dearborn,* 12 Gray, 336; *Tuthill* v. *Skidmore,* 124 N. Y. 479; *Hudson* v. *Swan,* 83 N. Y. 552.)

J. F. Ramage, also for Cross-Complainant-Appellant.

The lien was lost by the removal of the crop from the land of the mortgagor. (Civ. Code, sec. 2972; *Horgan* v. *Zanetta,* 107 Cal. 27.)

---

[1] 12 Am. St. Rep. 174.

Nicoll, Orr & Nutter, and R. C. Minor, for Respondents.

An estate for years is a chattel real (Civ. Code, sec. 765), and a chattel real is only personal property. (*Jeffers* v. *Easton*, 113 Cal. 352; *Smith* v. *Dodds*, 35 Ind. 452; *Cade* v. *Brownlee*, 15 Ind. 369; *Mayor* v. *Mabie*, 13 N. Y. 151.[1]) Growing crops are personal property, and not subject to the lien of a judgment. (*Davis* v. *McFarlane*, 33 Cal. 638; *Raventas* v. *Green*, 57 Cal. 254; *Rudolph* v. *Saunders*, 111 Cal. 233.) A leasehold interest and growing crops are not affected by a judgment or execution until a levy is made. (Code Civ. Proc., sec. 688.) A single material issue precludes a judgment on the pleadings. (*Wilmer* v. *Martin*, 87 Cal. 88.) Under the denial of the right of possession, defendant could prove the chattel mortgage and the lease to overthrow the right of possession, without having pleaded it. (Pomeroy's Code Remedies, secs. 670, 678; Bliss on Code Pleading, secs. 327-330; *Bridges* v. *Paige*, 13 Cal. 640; *Stone* v. *Bumpus*, 40 Cal. 432; *Wetmore* v. *San Francisco*, 44 Cal. 300; *Sparrow* v. *Rhoades*, 76 Cal. 210;[2] *McClelland* v. *Nichols*, 24 Minn. 176; *Sparks* v. *Heritage*, 45 Ind. 66; *Stanbach* v. *Rexford*, 2 Mont. 566; *Lane* v. *Sparks*, 75 Ind. 278.) There was no fraudulent preference of a creditor by the chattel mortgagee because there was no evidence of participation of the mortgagee in any fraud, or of his being chargeable with notice of the insolvency of the mortgagor. (*In re Eggert*, 98 Fed. 843; 102 Fed. 738; *Sabin* v. *Camp*, 98 Fed. 974; *Merchants' Bank* v. *Northrup*, 22 N. J. Eq. 58; *Grant* v. *Bank*, 92 U. S. 80; *Barber* v. *Priest*, 103 U. S. 293; *Stucky* v. *Bank*, 108 U. S. 74; *Grunsky* v. *Parlin*, 110 Cal. 179.) Defendant Hewlett had the right of possession of all the wheat, as lessor and mortgagee, when the action was commenced. (*Bank of Woodland* v. *Duncan*, 117 Cal. 41; *Hall* v. *Glass*, 123 Cal. 500.[3]) The trustee in bankruptcy stood in the place of the bankrupt, and took only the property he had at the time of the adjudication, subject to all valid claims, liens, and equities upon it. (*Chattanooga Bank* v. *Iron Co.*, 102 Fed. 759; *Donaldson* v. *Farwell*, 93 U. S. 631; *Casey* v. *Cavorac*, 96 U. S. 467; *Mitchell* v. *Winslow*, 2 Story, 630.) The chattel mortgagee had the right of possession of the crop, both under the terms of the mortgage and

---

[1] 34 Am. Dec. 538.　　　　[3] 69 Am. St. Rep. 77.
[2] 9 Am. St. Rep. 197.

of the lease. (Civ. Code, sec. 2927; *Harper* v. *Gordon,* 128 Cal. 489; *Flinn* v. *Ferry,* 127 Cal. 648.) Section 2972 of the Civil Code has no application to the facts in this case. It is only intended to protect creditors or innocent purchasers from the mortgagor, and not to affect the right of the mortgagor to remove the crop when harvested, for his own security. (*Martin* v. *Thompson,* 63 Cal. 3; *Byrnes* v. *Hatch,* 77 Cal. 243.) The cross-complainant, as well as the plaintiff, compelled the defendants to protect themselves and defend against both, and both were properly charged with costs. (Code Civ. Proc., secs. 1024, 1025; *Leadbetter* v. *Lake,* 118 Cal. 515.)

SHAW, J.—The complaint states a cause of action to recover possession of some 2,509 centals of wheat, in the warehouse of the Stockton Milling Company, or the value thereof in case delivery cannot be had. The defendants other than Hersom, trustee, answered, admitting that the wheat was in the warehouse of the Stockton Milling Company, and denying the other allegations of the complaint. The defendant Hersom answered separately, denying that plaintiff was the owner of, or entitled to the possession of, the wheat; admitting that he took possession of the wheat, but denying that he did so wrongfully. His admission was found by the court to be untrue. He also filed a cross-complaint against the Stockton Milling Company, alleging that it was wrongfully in possession of the wheat, that the cross-complainant was entitled to possession, and asking judgment for the recovery thereof, or for the value, if delivery could not be had. The plaintiff answered this cross-complaint against the Stockton Milling Company, denying the right of Hersom to the possession of the wheat, and setting up certain affirmative matters in further defense. The Stockton Milling Company and the other defendants filed a joint answer to the cross-complaint of Hersom, setting up affirmatively that the wheat in controversy was rightfully in possession of H. H. Hewlett under a certain chattel mortgage executed by Stuart, and that Hewlett was the owner of the property. The cause was tried by the court and judgment given in favor of the defendant Hewlett, declaring that he was the owner absolutely of one fourth of the wheat in question, and that he was entitled to the possession of the remaining three fourths by virtue of the chattel

mortgage, for the purpose of securing the debt therein set forth, and further adjudging costs in favor of Hewlett and the other defendants against the defendant Hersom and the plaintiff. Four separate appeals are here presented: First, an appeal by the plaintiff from the judgment; second, an appeal by Hersom from the judgment; third, an appeal by the plaintiff from an order denying his motion for a new trial; and the fourth, an appeal by Hersom from an order denying his motion for a new trial. Numerous points are presented upon these appeals, and in order to a proper understanding of the case it will be necessary to give a preliminary statement of the facts involved.

The wheat in controversy was raised upon a tract of land containing 1,160 acres situated in Stanislaus County. This land was leased by the defendant Hewlett to J. D. Stuart on November 20, 1897, for the term of two years, ending October 1, 1899. The term was afterwards extended for an additional year ending October 1, 1900, and it was during this extension that the wheat in controversy was sown and harvested. The lease provided that Stuart should sow the premises to wheat, and in proper time, at his own expense, harvest, thresh, clean, and sack the same, and when sacked that he should divide and set apart one fourth of the grain as the yearly rental, and deliver the same to Hewlett, that until such delivery the whole crop should be the property of Hewlett, and that upon such delivery, and not before, the remaining three fourths of the crop should become the property of the lessee, Stuart. It further provided that the lessee should in proper season summer-fallow such proportion of the land as in the proper farming thereof should be summer-fallowed, and that if he failed so to do Hewlett should have the right to enter upon the land and do such summer-fallowing thereon as should be proper and necessary, in which event there should be turned over to him such portion of the crop, in addition to the one fourth, as should be necessary to reimburse him for the expenses of such summer-fallowing. Upon August 22, 1899, Stuart executed to Hewlett a note for $757.62, payable one day after date. As security for this note Stuart pledged to Hewlett certain personal property; and it was agreed that the lease should be extended for the succeeding year, and that when the crop of grain was sown thereon Stuart should execute to

Hewlett a chattel mortgage on the crop to secure the note then executed and such further advances as should be made by Hewlett to Stuart. On November 13th Hewlett advanced Stuart the further sum of $210, for which Stuart executed his note, payable one day after date. On November 15th, in pursuance of the former understanding, Stuart executed to Hewlett a chattel mortgage on the crop to be thereafter raised and grown upon the lands leased, to secure the payment of the two notes. The mortgage provided that Stuart should care for the crop until it was fit for harvest, and then harvest, thresh, clean, and sack the same, and deliver the wheat to Hewlett as security for the payment of the note, and that if he failed in any respect to do so Hewlett should have the right to enter upon the premises, protect the crops, retain possession thereof, and harvest, thresh, and sack the same; that he should also have the right to haul and store the same, and sell and dispose of it at any time, and for such sums as he should deem proper for the best advantage of all concerned, and out of the proceeds to pay the costs and charges and all of the expenses incurred by Hewlett in the care, protection, harvesting, hauling, storing, and selling, and the residue to apply upon the debts secured by mortgage. The court found that the mortgage was made in good faith, and without design to hinder, delay, or defraud creditors, or to give a preference to the said Hewlett. During the months of November and December the wheat was sown upon the land by Stuart, the lessee, from which the wheat in controversy was produced, Hewlett advancing the seed, feed, and money necessary for that purpose.

On November 1, 1897, one James Watson obtained a judgment in the superior court of Stanislaus County against J. D. Stuart for the sum of $680 and costs, which judgment was afterwards assigned to Summerville, the plaintiff in this action. On November 1, 1899, the plaintiff caused an execution to be issued upon the judgment, and on January 17, 1900, under said execution the sheriff of said county sold to the plaintiff the leasehold interest of said Stuart in the land described, and on the same day, in pursuance of said sale, executed to the plaintiff a deed conveying to him the said property. The execution was not formally levied upon the land, nor upon the growing crop. The claim of the plaintiff

in this respect is, that the leasehold interest was real estate, and carried the crop with it, and that, as the judgment was a lien upon the real property of the defendant, no formal levy was necessary. Notice of the sale was given for three weeks previous thereto, as required by law in case of sales of real estate.

On January 25, 1900, Stuart filed his petition and schedules therein, and was duly adjudged a bankrupt by the United States district court in and for the northern district of California. At that time the wheat in question was a growing and standing crop on the land on which it was sown. Thereafter, on February 14, 1900, the defendant Hersom was elected a trustee of the bankrupt estate, and ever since has been such trustee. The crop mortgage executed by Stuart to Hewlett was recorded in the recorder's office in Stanislaus County on November 15, 1899, on the day of its execution. The lease was also recorded in the same office in Stanislaus County on the following day. At the time the mortgage was made Stuart resided in Stanislaus County. This, however, does not appear from the pleadings, but is found as a fact by the court. The notes mentioned in the chattel mortgage have not been paid. After the execution of the deed by the sheriff to the plaintiff, Hewlett demanded of the plaintiff that he, as the successor of Stuart, summer-fallow the land as the lease provided. The plaintiff failed to do so, and thereupon, about March 1, 1900, Hewlett entered and performed that work. Thereafter he continued in possession of the land for the protection of the crop, and when the wheat was harvested he took it into his possession and caused it to be shipped to the defendant Stockton Milling Company for storage, and that company still holds it in its possession. As to the three-fourths interest in the wheat which by the lease was to be the property of Stuart, Hewlett claims a right to hold it, or its proceeds, only to the extent that is necessary to pay the debts described in his mortgage. Other facts affecting particular points presented will be stated in connection with the discussion of the respective points to which they relate.

1. The judgment recovered by Watson against Stuart on November 1, 1897, did not become a lien on the leasehold estate of Stuart upon the subsequent execution of the lease creating that estate. This proposition is new in our jurisprudence,

but it is clearly deducible from the principles applicable to and declaring the character of such property. The Code of Civil Procedure makes a judgment a lien on "all the real property of the judgment debtor not exempt from execution in the county, owned by him at the time, or any which he may afterwards acquire," during the five years' continuance of the lien. (Code Civ. Proc., sec. 671.) The only case in which the principle in question came before this court is *McDermott* v. *Burke,* 16 Cal. 580, in which Field, J., merely referred to the contrary proposition as doubtful. In some of the states certain statutes have been held to make such interests subject to the lien of a judgment. In those states the courts in discussing the effect of the respective statutes practically concede that, in the absence of an express statute to the contrary, leasehold estates for years, only, are to be classed as personal property on which no lien is acquired until the levy of an execution. (*First Nat. Bank* v. *Bennett,* 40 Iowa, 537; *Loring* v. *Melendy,* 11 Ohio, 355; *Northern Bank of Kentucky* v. *Roosa,* 13 Ohio, 361; *Taylor* v. *Wynne,* 57 Hun, 590; 10 N. Y. Supp. 644.) The authorities generally are to the effect that at common law a judgment lien does not extend to estates for years. (17 Am. & Eng. Ency. of Law, 2d ed., 703; 2 Freeman on Judgments, sec. 353; 1 Black on Judgments, sec. 249; *Merry* v. *Hallet,* 2 Cowen, 497; *Vredenbergh* v. *Morris,* 1 Johns. Cas. 223; *Krause's Appeal,* 2 Whart. 398; *Bismarck etc. Assn.* v. *Bolster,* 92 Pa. St. 123.) In Iowa the statute provides that a judgment is a lien on the "real estate" of defendant. Another section defining the meaning of certain words and phrases declares that the "phrase 'real estate' includes lands, tenements, hereditaments, and all rights thereto and interests therein." It was held that an estate for years was subject to the lien of a judgment because it came within the meaning of the phrase "rights thereto" in this definition of the term real estate. (*First Nat. Bank* v. *Bennett,* 40 Iowa, 537.) Our code declares that "Estates in real property, in respect to the duration of their enjoyment, are either: 1. Estates of inheritance or perpetual estates; 2. Estates for life; 3. Estates for years; or 4. Estates at will." (Civ. Code, sec. 761.) And it is further declared that "estates for years are chattels real." (Civ. Code, sec. 765.) The section defining words and phrases declares that "the words 'real property'

are coextensive with lands, tenements, and hereditaments,''
and that the words ''personal property'' include, among other
things, chattels. (Code Civ. Proc., sec. 17, subds. 2, 3; Civ.
Code, sec. 14, subds. 2, 3.) It will be seen from these provis-
ions that although an estate for years is, for certain purposes,
classed as a species of estate in real property, it is nevertheless
a chattel. This was well understood at common law. Black-
stone divides real estate into two classes,—namely, estates of
freehold and estates less than freehold. Freehold estates are
divided into estates of inheritance and estates not of inheri-
tance. (2 Blackstone's Commentaries, 103-120.) Estates
less than freehold are divided into estates for years (id. 140),
estates at will (id. 145), and estates at sufferance (id. 150),
and yet, notwithstanding these classifications, the same author
declares that things personal include all chattels, and that
chattels real constitute one species of personal property, and
include, among other things, an estate for years, and that a
''freehold alone'' is real estate (id. 386). This court had
before it the question whether or not an estate for years was
personal property in *Jeffers* v. *Eston,* 113 Cal. 352. In that
case the court say: ''A term for years is only personal prop-
erty—a chattel real. . . . The common law upon the subject
has not been changed by our statutes. . . . By section 765
(Civ. Code) the common-law distinction between freehold
estates and estates for years is followed, and it is declared that
'estates for years are chattels real.' The same distinction is
to be found in section 14 and in sections 657 to 663 of the same
code.'' There is nothing in any of the foregoing statutory
provisions evincing an intention to change the general rule
that judgments of courts of record are not liens on estates for
years.

Section 700 of the Code of Civil Procedure provides that:
''Upon a sale of real property, the purchaser is substituted
to and acquires all the right, title, interest, and claim of the
judgment debtor thereto; and when the estate is less than
a leasehold of two years' unexpired term, the sale is absolute,''
and that otherwise it is subject to redemption as therein pre-
scribed. This, however, cannot be considered as a legislative
construction of the phrase ''real property'' applicable to and
fixing the meaning of the same phrase where used in section
671 providing for judgment liens. Section 700. was intended

to state the effect of a sale of any and all interests in real property, and to declare in what cases it should be subject to redemption. It applies alike to sales made to enforce the lien of the judgment and to sales of chattels real enforcing liens created by the levy of an execution. It has no relation to or effect on the questions, when the lien begins, the manner of its creation, or the acts from which it arises. The effect of the clause therein concerning leasehold interests with respect to its bearing on the meaning of the phrase ''real property'' is merely to show that for the purposes of that section those words are used in a sense broader than their common-law meaning, and include chattels real as well as freehold estates. Without that clause the section would be held to apply only to estates of inheritance and estates for life, or, by the common-law classification, freehold estates. (See *People* v. *Westervelt,* 17 Wend. 675; *Westervelt* v. *People,* 20 Wend. 417; *Ex parte Wilson,* 7 Hill (N. Y.) 150, which affirm this proposition.)

The claim of the plaintiff that no formal levy was necessary upon the growing crop nor upon the leasehold interest is, by reason of the proposition which we have just considered, necessarily untenable. It may be conceded, as was decided in *Lenhardt* v. *Jennings,* 119 Cal. 192; *Bagley* v. *Ward,* 37 Cal. 121;[1] and *Blood* v. *Light,* 38 Cal. 654,[2] that the levy of an execution is not necessary where the judgment itself constitutes a lien upon the real property which is the subject of the execution sale. But, as we have seen, the judgment in this case did not constitute a lien upon the property sold, and as there was no levy, it follows that the sale, if otherwise valid, took effect upon the day of its date, and not before, or, at all events, not before the notices of the sale were posted (see *Lenhardt* v. *Jennings,* 119 Cal. 192), and that the right of the plaintiff began upon one or the other of those dates, and is subsequent and subject to the right of the mortgagee. We think, therefore, that there was no lien upon the leasehold estate of Stuart in favor of the plaintiff until the sale took place or the notices were posted, which was several weeks after the execution of the mortgage to Hewlett, and consequently that, so far as that question determines his right, Hewlett had the superior right to the possession of the wheat

[1] 99 Am. Dec. 256.    [2] 99 Am. Dec. 441.

in controversy, so far as that possession may be necessary to protect his lien thereon for the payment of the debts aforesaid.

2. It is contended by Hersom, and also by the plaintiff, Summerville, that the defendant Hewlett has waived his lien by filing his answer to the suit in claim and delivery, and therein averring that he is the absolute owner of the wheat in controversy. The principle relied upon is stated thus in *Williams* v. *Ashe,* 111 Cal. 185: "If one having but a lien is sued in replevin and answers, claiming absolute ownership, he will not be permitted upon the trial to assert any right as lienor. His lien is absolutely lost." The answer of Hewlett to the complaint does not aver that he is the absolute owner of the wheat. It rests upon the denial of ownership or right of possession in the plaintiff, and of the wrongful taking of possession or withholding thereof by the plaintiff from the defendant. In the answer to the cross-complaint of the defendant Hersom, in which Hewlett joins, it is alleged that Hewlett was at all the times in question the owner of and entitled to the possession of the wheat. If this were the only answer to the cross-complaint, and that allegation had been insisted upon at the trial, and if the cross-complaint had been directed to Hewlett, the case would come within the rule stated in *Williams* v. *Ashe.* But the answer to the cross-complaint further alleges the giving of the mortgage by Stuart to Hewlett, and that Hewlett, by virtue of the mortgage, is entitled to the possession of the property for the securing of his debt. The findings state also that upon the trial Hewlett did not claim absolute ownership of the three fourths of the wheat in question, but conceded to the defendant and crosscomplainant Hersom all of the rights thereto, save that of possession, for the purpose of disposing of the wheat and paying to himself the amounts secured by the mortgage. The rule above quoted from *Williams* v. *Ashe* is stated in that opinion to be qualified to the extent that "if one who has claimed as owner is afterward proved to have but a lien, he shall not thereafter be deprived absolutely of his lien, if his claim was honestly though mistakenly entertained and pressed; but before he can be allowed his lien he must abandon the false claim of ownership." We think the defendant Hewlett is entitled, under this limitation of the rule, to assert and

maintain his lien, notwithstanding his answer claiming absolute ownership. Under our system of pleading a defendant is entitled to make inconsistent answers, and this right would be of small benefit if the making of one answer operated to defeat the other, particularly in a case where the party claiming the lien was not required to answer at all, and the question of absolute right, as in this case, was abandoned upon the trial.

The further claim is made that by taking the possession of the wheat when it was harvested Hewlett wrongfully converted it to his own use, and thereby, under section 2910 of the Civil Code, extinguished his mortgage lien. The court finds that Hewlett, upon the harvesting of the crop, took possession of and stored it in the warehouse of the Stockton Milling Company, where it still remains. He had full authority to do this under the power contained in his mortgage, and as he did not claim to hold otherwise than as mortgagee, this act did not amount to a conversion.

So far as the appeal from the judgment is concerned, this would dispose of this proposition. But it is claimed that the evidence shows that Hewlett, without authority, took possession of the leased land several months before the crop was ready for harvesting; that this was a conversion of the crop and a consequent waiver of the lien of the mortgage; and that therefore the court should have found that Hewlett was not entitled to the possession. There are several grounds upon which this claim must be held untenable. A chattel mortgage does not pass title to the mortgagee or give him a right to possession of the mortgaged property before the debt becomes due, unless the mortgage so provides. (*Bank of Ukiah* v. *Moore,* 106 Cal. 680.) In this case the debts were due when the mortgage was executed. The covenant to pay the debts was therefore broken as soon as made, and in that sense the mortgagor was in default, thus giving the mortgagee the right, under the terms of the mortgage, to take possession at any time. The mortgage also contained what we construe to be an independent covenant that Hewlett could "at all times enter into the premises to view the same, or take any measures necessary for the protection of said crops, or his interest therein." The effect of this was to give Hewlett an equal right with Stuart to the possession of the crop, for the purpose of pro-

tecting it, at any time after the execution of the mortgage. There was evidence sufficient to sustain the finding that he entered in good faith for that purpose. Furthermore, the provision in the lease that the crop should remain the property of Hewlett until it was harvested was valid between the parties. (*Howell* v. *Foster*, 65 Cal. 169; *Farnum* v. *Hefner*, 79 Cal. 582.[1]) The right of property in the crop was therefore vested in Hewlett until it was harvested. Whether or not this arrangement would be held invalid against creditors as a secret lien, as in *Stockton etc. Assn.* v. *Purvis*, 112 Cal. 242,[2] is a question not arising, for the lease was duly recorded before any creditor had acquired any lien, and before the adjudication in bankruptcy, and, as the mortgage would be effectual to hypothecate, in priority to the claims of appellants, whatever right Stuart then had in the growing crop, we do not see that creditors could have been injuriously affected by the provision reserving title. It is clear from the fact that the title was in Hewlett at the time he took possession of the farm, that his taking possession, even if not authorized by the mortgage, could not have the effect of waiving his prospective lien on the wheat, which at that time was inchoate, and which never became absolute until harvest, when Stuart became the owner. His possession was consistent with his own title, and was not inconsistent with his rights under the mortgage nor with the rights of other creditors subordinate to the mortgage. He did not repudiate his lien, but acted for the purpose of protecting his rights thereunder. The conversion referred to in section 2910 of the Civil Code must consist of some act inconsistent with the continuance of the lien and equivalent to a denial or repudiation of it. An act done to preserve and protect the property in order that it may remain subject to the lien, and which is equally beneficial to those having subordinate rights and not in antagonism thereto, is not a wrongful conversion within the meaning of this section. (1 Jones on Liens, sec. 1030; *Williams* v. *Ashe*, 111 Cal. 185.) We are of the opinion that upon either ground the case fails to show a wrongful conversion by the defendant Hewlett.

3. There is no merit in the proposition that Hewlett lost his lien by reason of the removal of the wheat from the land

---

[1] 12 Am. St. Rep. 174.                [2] 53 Am. St. Rep. 210.

on which it grew. The provisions of section 2972 of the Civil Code that the lien of a mortgage upon a growing crop continues after its severance from the land so long as it remains on the land of the mortgagor has no application to the facts of this case. That section refers to cases where the crop, after severance, is removed by the mortgagor, or by some third person, from the mortgagor's land, and not to cases where the mortgagee, in pursuance of the terms of the mortgage, removes the crop for his better security. (*Campodonico* v. *Oregon Imp. Co.,* 87 Cal. 566; *Byrnes* v. *Hatch,* 77 Cal. 244; *Martin* v. *Thompson,* 63 Cal. 4; *Wilson* v. *Prouty,* 70 Cal. 197.)

4. The defendant Hersom gave notice of motion for judgment in his favor against the defendant Hewlett and Stockton Milling Company upon the pleadings, consisting of Hersom's cross-complaint and the answer of the said defendants thereto. In pursuance of this notice a motion was made for judgment against the Stockton Milling Company alone. This motion was denied, and the ruling is assigned as error. The motion was properly denied. Hersom claimed solely as trustee in bankruptcy of J. D. Stuart. The first allegation of the answer to this cross-complaint is a denial that Hersom is or ever was "the duly elected, appointed, qualified, or acting trustee" of said bankrupt estate. The allegation of the capacity of Hersom is material to his recovery. The denial of that allegation in the general form in which it was made was applicable to each count or cause of action stated in the cross-complaint. It raised a material issue which it was necessary to decide before it could be said that Hersom was entitled to any judgment whatever. The presentation of this issue was sufficient to prevent a judgment on the pleadings. (*Widmer* v. *Martin,* 87 Cal. 88.) It is therefore not necessary to consider the other questions discussed by counsel under this assignment of error.

5. We are of the opinion that the execution of the mortgage by Stuart to Hewlett on November 15, 1899, was not an unlawful preference of a creditor, and, as such, in violation of the provisions of the bankruptcy law. In order to make such a preference unlawful it is necessary,—1. That the preference shall have been made with the intention on the part of the bankrupt to prefer the person to whom the mortgage is given; and 2. That the mortgagee, at the time he receives the

mortgage, shall have reasonable cause to believe that it was intended thereby to give a preference to him. This involved the further proposition that the mortgagee must, at the time he receives the mortgage, have reasonable cause to believe that the debtor is insolvent, for otherwise the preference would be lawful and innocent. Insolvency under the present Bankruptcy Law does not occur, as it did under the former law, when the person is unable to meet his obligations as they become due. Under the present Bankruptcy Law a debtor is not insolvent unless his property, at a fair valuation, is not sufficient in amount to pay his debts. We do not think the evidence in this case necessarily shows that Hewlett, at the time he took the mortgage, had good cause to believe, either that Stuart, in this sense, was insolvent, or that he intended thereby to give a preference to the mortgagee. The transaction itself implies the contrary. Shortly prior to the giving of the mortgage Hewlett had extended the lease for another year, with the understanding that Stuart would sow a crop of grain thereon, that Hewlett should advance him such money as was necessary to enable him to care for the crop, at least to the harvesting, and should take a chattel mortgage to secure such advances and the pre-existing debt. Stuart had sown the land, in part at least, to grain at the time the mortgage was given, and proceeded thereafter, apparently in good faith, to complete the sowing, Hewlett furnishing seed and feed for that purpose. These acts are inconsistent with the theory that either party at that time believed that Stuart's property was insufficient to pay his debts, and that it was intended that Hewlett was to be preferred to the exclusion and injury of other creditors. It does not appear that Hewlett knew of the insolvency of Stuart. The only evidence upon that point is that of Stuart himself, who testifies as follows: "I guess Mr. Hewlett was acquainted with my financial condition; I don't know that really; I told him I needed money, and I wanted a little money at that time. I think he knew my financial condition at the time of the pledge of which I spoke." This could well be understood to mean only that Hewlett knew that Stuart needed money, which does not necessarily imply insolvency. If it was intended to mean more, it was a mere conclusion of Stuart. He states no facts upon which to base it, and we do not think it is sufficient to enable us to say that the finding of

the court on this point is contrary to the evidence. The records at that time disclosed the existence of three judgments, taken several years previously, in the superior court of the county. The appellant, Hersom, claims that Hewlett must be deemed to have constructive notice of these judgments, and therefore must be presumed to know that Stuart was insolvent. We do not understand this to be the law. Such judgments constitute a lien upon the real estate of the judgment debtor, and all persons dealing with that real estate must be held to have constructive notice of the judgment, but the law goes no further than this. It does not require every person who deals generally with the judgment debtor to take notice of the existence of these judgments, nor does it impute notice to such persons for the purpose of charging them with knowledge of insolvency. There is nothing in the evidence to indicate that Hewlett had any actual knowledge whatever of the existence of these judgments. It is also to be observed that there is no evidence to show that Stuart was in fact insolvent at the time he made the mortgage. The judgments do not, necessarily, prove insolvency. The schedules filed in the bankruptcy proceeding some six weeks later show that he was indebted in an amount near ten thousand dollars, but there is nothing to show what property he had at that time other than the inference to be derived from the judgment of the court in bankruptcy that it was not sufficient to pay these debts. This might justify an inference that he was not solvent at the time he gave the mortgage, but it is not sufficient to call for a reversal of the finding of the court on that subject, nor to require a finding that Hewlett at that time knew that he had not sufficient property to pay his debts. We cannot disturb the finding on this point.

6. In the portion of Hewlett's answer to the cross-complaint referring particularly to the crop mortgages, it is averred that the mortgage was duly recorded in Stanislaus County, in which the land is situated, but it does not allege that Stuart, the mortgagor, then resided in that county. It is silent as to his residence, and there is no general statement that it was recorded in the county of his residence. It is contended that this renders this part of the answer ineffectual, that the mortgage, as stated, does not constitute a valid lien on the wheat, and that this defect is not cured by the evi-

dence and finding that Stuart at the time the mortgage was executed resided in that county. It is perhaps a sufficient answer to this proposition to refer to the fact that the cross-complaint is addressed to the defendant Stockton Milling Company alone, and that therefore Hewlett was not called upon to answer it at all. The only judgment in favor of the Stockton Milling Company is a judgment for costs against Hersom and in favor of that company jointly with Hewlett and two other defendants. There being no cross-complaint against Hewlett, the judgment in his favor for the possession of the wheat is based upon the complaint and the answer thereto. The fact that Hewlett joined in an insufficient answer to the cross-complaint against another party is immaterial and does not affect the judgment in his favor. Disregarding this point, however, and considering the case as if the cross-complaint had been directed to Hewlett also, we think the objection is not well taken. The allegations of the cross-complaint concerning the right of Hersom are allegations of the ultimate facts. The first count relates to all the wheat. It avers that Hewlett leased the land to Stuart, that Stuart had sowed to wheat a portion of the lands leased, that at the time of the adjudication in bankruptcy the wheat was a growing crop on the land and was the property of Stuart, and that ever since his appointment as trustee the said Hersom, as such trustee, had been and was still entitled to the possession of the wheat. The other counts relate exclusively to certain specific lots of the wheat, and each alleges, in general terms with respect to the particular lot to which it refers, that Hersom, as such trustee, was, and still is, entitled to the possession thereof. The defendant Hewlett, in answer to these allegations, denies that the crop was the property of Stuart at the time he was declared a bankrupt, or that Hersom, as trustee or otherwise, was then, or at any time had been, entitled to the possession of the wheat, or any part thereof, and alleges that he, Hewlett, at all of the times in controversy, was, and still is, entitled to the possession thereof. The action of claim and delivery is primarily an action for possession. The general allegations of ownership or right of possession of the defendant are sufficient, and this form of statement is the better form of pleading. (*Nudd* v. *Thompson,* 34 Cal. 46; *Conner* v. *Bludworth,* 54 Cal. 635.) The case of *Nudd* v. *Thompson* also holds

that it is sufficient for a defendant to deny the general allegations, and that having done so a failure to deny other facts showing in detail the basis of plaintiff's ownership and right of possession is not to be taken as an admission of such particular facts. The denial of the fact that the cross-complainant, at the time he filed his cross-complaint, had the right of possession puts the question of the right in issue. In order to show that he did not then have that right, the defendant could properly introduce any evidence showing that the right of possession was at that time vested in a third person, or in the defendant himself. Such evidence would be in direct contradiction of the allegation denied. An allegation that a thing is in one place is disproved by evidence showing that it is in another place; so an allegation that the right of possession is in the plaintiff can be shown to be untrue by proof that the right of possession is in the defendant or in some other person. The defendant was therefore entitled to show by evidence that he had the right of possession, for the purpose of securing the debt, as a mortgagee holding a valid chattel mortgage thereon. There are some cases holding contrary to these views (*Guille* v. *Fook,* 13 Or. 577; *Gay* v. *Fretwell,* 9 Wis. 186; *Tell* v. *Bever,* 38 N. Y. 161). We think, however, that the great weight of authority, as well as the better reason, is in harmony with the conclusion above stated. The following authorities so hold: *Cumbey* v. *Lovett,* 76 Minn. 229; *Lindsay* v. *Wyatt,* 1 Idaho, 739; *McClelland* v. *Nichols,* 24 Minn. 176; *Holliday* v. *McKinne,* 22 Fla. 153; *Child* v. *Child,* 13 Wis. 17; *Richardson* v. *Steele,* 9 Neb. 483; *Yandle* v. *Crane,* 13 Kan. 344; *Lane* v. *Sparks,* 75 Ind. 278; *Sparks* v. *Heritage,* 45 Ind. 66; Cobby on Replevin, sec. 1002. The proposition is the same in principle as that involved in *Eaton* v. *Metz,* (Cal.) 40 Pac. 947; *Grum* v. *Barney,* 55 Cal. 254; *Humphreys* v. *Harkey,* 55 Cal. 283; and *Mason* v. *Vestal,* 88 Cal. 396.[1] Evidence of the mortgage lien whereby Hewlett had the right of possession was therefore properly admitted under the denial. It was not necessary to plead it specially.

7. The judgment against the defendant Hersom and the plaintiff, in favor of Hewlett and the other defendants, for their costs, is not subject to the objection made by Hersom that it is erroneous against him because he was a co-defendant.

---

[1] 22 Am. St. Rep. 310.

He filed a cross-complaint against Hewlett's bailee, and this made it necessary for Hewlett to either defend against Hersom's claim himself or see that his bailee did so. In either case Hersom is not legally injured by a judgment for the costs incurred in defeating his claim.

We find no error in the record. It is therefore ordered that the judgment and orders appealed from be affirmed.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.