[Civ. No. 9830.  Fourth Dist., Div. Two.  Feb. 11, 1971.]

DONALD  L.  ARNETT et al., Plaintiffs and Respondents, v.
JAMES  E.  PETERSON et al., Defendants and Appellants.

## COUNSEL

Munns & Kofford, Eischen, Raatz & Kast and David M. Raatz for Defendants and Appellants.

Wenke, Kemble & Burge and W. Patrick O'Keefe, Jr., for Plaintiffs and Respondents.

## OPINION

**GARDNER, P. J.**—Appellants (defendants below) are James E. Peterson, a building contractor and judgment creditor of St. Pierre Investment, Inc., and his assignee, Ralph S. Riffenburgh. Respondents are several occupants

of an apartment house project in South Laguna known as the "Laguna Royale" which was developed by St. Pierre. The appeal is from a judgment quieting title in respondents to individual leasehold interests in the Laguna Royale and declaring that Peterson and Riffenburgh have no interest in such leaseholds.

The chronological development of the case is as follows.

During 1961, Heers Bros., Inc. leased to Riverside Plaza, Inc. for a term of 99 years the land upon which Laguna Royale was eventually built. During 1962, Richard M. Darby acquired the fee interest in the Laguna Royale property from Heers Bros. and on the same day St. Pierre received the leasehold interest from Riverside Plaza. Construction of the Laguna Royale proceeded, and litigation attended the construction. On May 13, 1968, a judgment was entered on a verdict in favor of Peterson against St. Pierre in the amount of $102,000, the execution of which judgment was ordered stayed for 30 days. An abstract of the judgment was recorded on May 14, 1968. On June 19, 1968, a writ of execution was issued on the St. Pierre judgment, and on the same day defendant Musick, Sheriff of Orange County, levied upon the interest of St. Pierre in Laguna Royale standing in the names of the individual respondents.

Each respondent had received from St. Pierre by means of a "sub-assignment and occupancy agreement" the exclusive right to occupy a designated apartment in the Laguna Royale for the unexpired term of the St. Pierre leasehold. Each respondent also had the right to use certain property in Laguna Royale in common with the other tenants, and each undertook to pay a percentage of all maintenance expenses and to be responsible for the upkeep of the interior of a particular apartment. For purposes of the decision, all the respondents are treated as being in the most vulnerable position of any of them, that is, as having received their interest from St. Pierre after the abstract of judgment was recorded. Prior to the date execution was levied on the judgment, a "sub-assignment and occupancy agreement" had been made as to each respondent.

Thus, the issue is framed as follows: Was St. Pierre's leasehold in the Laguna Royale real property, so that the judgment would become a lien on the day the abstract was recorded (Code Civ. Proc., § 674), or was it personal property so that it was not affected until levy of the execution (§ 688)? If the former is the case, respondents' interests are subject to the lien; if the latter is the case, respondents' interests were secured prior to the lien.

The court correctly found and concluded that on the day the abstract of judgment was recorded St. Pierre was a tenant for a term of years in the

Laguna Royale development, that such interest was personal property, and that accordingly the judgment was not a lien thereon.

An estate for years is personal property, and judgments of courts of record are not liens on estates for years; this rule was unequivocally enunciated in *Summerville* v. *Stockton Milling Co.,* 142 Cal. 529, 538-539 [76 P. 243]. In considering the question, the court first observed that the authorities generally are to the effect that at common law a judgment lien does not extend to estates for years. The court then proceeded to examine our own code, and determined that the same rule applies in California. The court pointed out that by section 761 of the Civil Code, estates in real property are either estates of inheritance, for life, for years, or at will; by section 765, estates for years are chattels real; and by section 14 chattels are included within the definition of personal property. In the years intervening between *Summerville* and today, the Legislature has amended section 674 of the Code of Civil Procedure a number of times, without expanding the category of property subject to judgment liens. During the same interval, the Civil Code sections mentioned in *Summerville* have not been touched.

Nothing is found in *Estate of Pitts,* 218 Cal. 184 [22 P.2d 694] to indicate that the Supreme Court has directly or impliedly withdrawn the rule of *Summerville* as it applies to leasehold interests in residential properties. What the court considered in *Pitts* was the general question whether the corporation which created and maintained the apartment house had a lien on the tenant's interest for purposes of a code section relating to probate sales which specified, "At any sale of lands upon which there is a . . . lien, the holder thereof may become the purchaser, and his receipt for the amount due him from the proceeds of the sale is a payment *pro tanto.*" For such purpose the court considered that "land" included an interest in land, that the tenant had an interest in land, and that the corporation had a lien on such interest analogous to a vendor's lien. A factual distinction can be made between the straightforward leasehold situation of the present case and the collection of rights held by the tenant in *Pitts,* where the court observed, "While the corporation held the legal title, yet, to all intents and purposes, the entire equitable estate was distributed proportionately among the owners of the apartments." (P. 191.) However, the more significant aspect of the case is that the statute under consideration was sufficiently general so that the court need not consider the classical common law distinctions inherent in the phrase "real property." This court recently followed the same approach in *Parker* v. *Superior Court,* 9 Cal. App.3d 397 [88 Cal.Rptr. 352], where it was held that the filing of a lis pendens is authorized in an action concerning a leasehold because the provisions of section 409 of the Code of Civil Procedure extend not only

to actions "concerning real property" but also to those "affecting the title or the right of possession of real property."

Nothing is found in the legislation relating to condominiums passed at the 1963 Regular Session of the Legislature (Stats. 1963, ch. 860, p. 2090) to compel a result contrary to the foregoing. The first sentence of the first section of that act declares that "A condominium is an estate in real property. . . ." However, as pointed out in *Parker,* at page 400, "Although not 'real property' or 'real estate' a leasehold is nevertheless an estate in land, an estate in real property. (Civ. Code, § 761; *Callahan* v. *Martin, supra,* 3 Cal.2d 110, 118 [43 P.2d 788, 101 A.L.R. 871]; *Bachenheimer* v. *Palm Springs etc. Corp.,* 116 Cal.App.2d 580, 592 [254 P.2d 153].)" Moreover, the condominium legislation expressly provides that a condominium may, with respect to the duration of its enjoyment, be an estate for years. (Civ. Code, § 783.)

■ As to a further claim of error, the appellants called as their own witness, Richard M. Darby, one of the original incorporators, and a stockholder and sometimes director of St. Pierre. As already noted, Darby received in his own right from Heers Bros. the fee interest in Laguna Royale on the same day that St. Pierre received its leasehold interest from Riverside Plaza. Appellants sought to introduce testimony tending to show that an "*alter ego*" relationship existed between Darby and St. Pierre in an attempt to show that there was a merger of the fee and leasehold interest. Objection to this line of questioning was sustained by the court on the ground that it was not relevant to any issue raised by the pleadings. The court ruled correctly. The *alter ego* question was not raised by any pleading, nor was either Darby or St. Pierre a party to the case. Nor did the court abuse its discretion in refusing to permit appellants to amend their pleading to raise this issue. (Code Civ. Proc., § 473; cf. *Heckes* v. *Sapp,* 229 Cal.App.2d 549 [40 Cal.Rptr. 485]; *Design Associates, Inc.* v. *Welch,* 224 Cal. App.2d 165 [36 Cal.Rptr. 341].)

■ However, notwithstanding this, even if in some manner it were possible to disregard the corporate entity and to find that merger occurred, the result would be as recited in *Erving* v. *Jas. H. Goodman & Co. Bank,* 171 Cal. 559 [153 P. 945], "Where a greater estate and a lesser coincide and meet in the same person . . . , the lesser is annihilated." That is, the lesser estate for years transferred to St. Pierre would merge in the greater estate in the freehold transferred to Darby. Appellants who depend on the existence of an interest vested in St. Pierre in order to realize anything on their execution against respondents cannot be injured by a ruling which rejects offered proof to the effect that the interest of St. Pierre in Laguna

Royale was annihilated on the day of its creation. (Code Civ. Proc., § 475.)

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.