In the Matter of Sylvin S. PERRY,
Bankrupt.

FRANCHISE TAX BOARD of the State
of California, Petitioner-Appellant,

v.

Curtis B. DANNING, Trustee-Appellee.

No. 71–1675.

United States Court of Appeals,
Ninth Circuit.

June 8, 1973.

Rehearing Denied Nov. 2, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1565.

Rodney Lilyquist, Deputy Atty. Gen.
(argued), Evelle J. Younger, Atty. Gen.,
Mark W. Jordan, Philip C. Griffin, Dep-
uty Attys. Gen., Los Angeles, Cal., for
petitioner-appellant.

Bruce H. Spector (argued), of Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., for trustee-appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and ZIRPOLI,* District Judge.

DUNIWAY, Circuit Judge:

## OPINION

■ This case presents a question of first impression—whether the California Franchise Tax Board's claim for unpaid California personal income taxes, recorded as provided in the California Code, is a perfected lien upon personal property of a bankrupt taxpayer, and entitled to priority under 11 U.S.C. § 107(c)(3), or is insufficiently perfected and thus not good against the trustee or creditors under 11 U.S.C. § 107(c)(1)(B). The referee and the district court held that the lien was not sufficiently perfected. We affirm.

The stipulated facts are as follows:

The bankrupt incurred a California personal income tax liability for 1962 which was never satisfied. On December 15, 1966, some two-and-one-half months before the petition in bankruptcy was filed, the Franchise Tax Board (FTB) recorded a tax certificate with the Los Angeles County Recorder pursuant to Cal.Rev. & Tax.Code §§ 18881, et seq. (West 1970). Section 18882 of that Code provides:

> "From the time of filing for recording the amount of tax, interest, and penalty set forth constitutes a lien upon all property of the taxpayer in the county, owned by him or afterward and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and continues for 10 years from the date of the recording unless sooner released or otherwise discharged."

We agree with the FTB that it did acquire a lien upon both the real property (if any—here there was none), and the personal property of the taxpayer. The phrase "all property" is broad enough to cover both types of property, and we see no reason to give it a narrower meaning.

That conclusion, however, does not solve our problem. The lien must be "perfected or enforceable at the date of the bankruptcy against one acquiring the rights of a *bona fide* purchaser on that date, whether or not such purchaser exists" (11 U.S.C. § 107(c)(1)(B)). The California statute provides that "[the] lien has the force, effect, and priority of a judgment lien" (§ 18882). In California, a recorded judgment creates a lien, good against *bona fide* purchasers, only upon the debtor's real property; the levy of a writ of execution is required to bind the debtor's personal property in a manner that is effective against *bona fide* purchases. Cal. Code Civ.Proc. § 674 (West Supp.1972); Miller v. Bank of America, 9 Cir., 1948, 166 F.2d 415, 417–419. Without such a levy, the lien of the judgment on personal property has no "force, effect [or] priority" against *bona fide* purchasers. Thus the California definition of the lien, and particularly of its "force, effect and priority," makes it clear that, so far as personal property is concerned, the lien is not "perfected or enforceable" at the date of bankruptcy as required by 11 U.S.C. § 107(c)(1)(B). The FTB could have perfected its lien by going further and issuing and levying a warrant for the collection of the tax, which has the force and effect of a writ of execution. Cal.Rev. & Tax.Code § 18907 (West 1970). This the FTB did not do.

To counteract this seemingly obvious result, the FTB points to certain other California statutes, arguing that they show that, in enacting § 18882, the legislature intended to create a lien on the taxpayer's personal property that is good against *bona fide* purchasers.

First, FTB points to Cal.Rev. & Tax. Code § 6757 (West 1970) relating to de-

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

linquent sales and use taxes. Before 1957, this section provided for the recording of a lien, which would attach to "all the real property" of the taxpayer. In that year the language was changed to read "all property," as does § 18882. Both sections retain the same definition of the "force, effect, and priority" of the lien as that of a judgment lien. However, there was added at the end of the section:

"The lien imposed by this section shall not be valid insofar as personal property is concerned as against a purchaser for value without actual knowledge of the lien."

Nothing comparable appears in § 18882.

Cal.Unemp.Ins.Code § 1703 (West 1972) has a similar history and similar language, including a proviso reading:

"[E]xcept that with respect to personal property the lien shall not be valid against a purchaser for value without actual knowledge of the lien."

In 1969, the California legislature enacted the following provision as Cal. Unemp.Ins.Code § 1703.5 (West 1972), Cal.Rev. & Tax.Code § 6757.5 (West 1970), and *Id.* § 18882.5:

"The board may also file a certificate of state tax lien with the Secretary of State . . . . From the time of filing of the certificate with the Secretary of State, the amount required to be paid, together with interest and penalty constitutes a lien upon all personal property in the state owned by the person or afterwards acquired by him until the certificate of state tax lien lapses. The lien has the force, effect and priority of a judgment lien."

Again, a proviso was added to the sales and use tax (§ 6757.5) and unemployment compensation tax (§ 1703.5) Code sections, but not to the one applicable to personal income tax (§ 18882.5):

"A lien imposed by this section shall not be valid as against a purchaser for value without actual knowledge of the lien."

The FTB urges that we should conclude from this history, first, that "all property" was intended to and does mean both real and personal property, and second, that the exceptions in the sales and use tax and in the unemployment compensation tax sections indicate that the legislature believed that, without them, the liens would be good against *bona fide* purchasers of personal property, and that the absence of such an exception in §§ 18882 and 18882.5 indicates that the liens under those sections were meant to be, and are, good against *bona fide* purchasers of personal property.

The first argument, we can and do accept. The second, however, does not persuade us. Each of the statutes that the FTB cites defines the "force, effect, and priority" of the lien as that of a judgment lien. As we have seen, such a lien, until enforced by levy, is not good against *bona fide* purchasers of personal property. Thus the provisos in favor of such purchasers in the sales tax and unemployment compensation tax sections are perfectly consistent with the defined "force, effect, and priority" of the liens. The provisos are unnecessary and redundant. They may well have been added out of an abundance of caution; there is no legislative history to tell us why they are there. We cannot translate the absence of such provisos in §§ 18882 and 18882.5 into a determination by the legislature that the definition of the "force, effect, and priority" of the liens in those sections means something different from what it says.

Affirmed.

ZIRPOLI, District Judge (dissenting):

Appellant seeks review of an order of the District Court denying its Petition for Writ of Review from an adverse decision of a Referee in Bankruptcy. The parties have filed an agreed statement of facts, and they agree that the issues presented by this appeal are: (1) whether pursuant to state law, California Revenue and Taxation Code § 18882

creates a tax lien on personal property for purposes of § 67c(3) of the Bankruptcy Act [11 U.S.C. § 107(c)(3)]; and (2) if § 18882 does create a lien on personal property, whether the lien is valid against one acquiring the rights of a bona fide purchaser, as required by § 67c(1)(B) of the Bankruptcy Act [11 U.S.C. § 107(c)(1)(B)]. Because the bankrupt had no real property, these issues greatly affect the status of appellant's tax claims. If, as the Referee and District Court concluded, § 18882 does not create a lien on personal property enforceable against a bona fide purchaser, appellant would be relegated to the status of a general creditor, because the tax debt involved became due more than three years preceding bankruptcy. *See* §§ 64a(4) [11 U.S.C. § 104(a)(4)]; 17a(1) [11 U.S.C. § 35(a)(1)]. But if a lien satisfying the requirements of § 67c(3) was created, appellant would be entitled to a priority, subject only the claims of § 64a(1) and (2) creditors [11 U.S.C. § 104(a)(1) and (2)].

### I.

The statute that governs this dispute, Revenue and Taxation Code § 18882, at the time of the bankruptcy provided:

> From the time of the filing for recording [of a tax certificate described in § 18881 with any county recorder] the amount of the tax, interest, and penalty set forth constitutes a lien upon all property of the taxpayer in the county, owned by him or afterward and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and continues for 10 years from the date of the recording unless sooner released or otherwise discharged.

The finding of the Referee, which was summarily affirmed by the District Court, was that this statute does not create a lien on personal property. The reasoning, as explained to the parties in a letter opinion, was that the second sentence of § 18882, giving the lien "the force, effect and priority of a judgment

lien," made the tax lien the same as a judgment lien. Pursuant to California Code of Civil Procedure § 674, a judgment lien attaches only to the real property of the debtor; the Referee therefore concluded that a § 18882 lien was similarly limited. The Referee also noted that in 1969—after the present bankruptcy was filed—the legislature enacted § 18882.5 of the Revenue and Taxation Code, which provides that the Franchise Tax Board may also file a certificate with the Secretary of State, and from the date of the filing the tax constitutes a lien on all personal property in the state owned or thereafter acquired by the debtor. The Referee argued that this provision was added to extend the tax lien to personal property, and was evidence that § 18882 did not create a lien on personal property.

Appellant argues that the Referee has misinterpreted the statute. In appellant's view, the scope of the lien is governed by the words "all property" in the first sentence of the statute, and thus a lien on personal as well as real property is created. The second sentence was not intended to limit the breadth of the preceding sentence, but only to define the characteristics of the lien created.

There is, unfortunately, no state court decision interpreting the breadth of the lien created by § 18882. The only reported opinion that discusses the issue, Schriber v. Alameda County–East Bay Title Ins. Co., 156 Cal.App.2d 700, 707, 320 P.2d 82 (1958), expressly leaves the question unresolved. Thus, the court is faced with the uncomfortable task of interpreting an ambiguous state statute without guidance from the state courts.

There appears to be little doubt that were it not for the second sentence of § 18882, the statute would create a lien on personal property. Not only is this the most reasonable interpretation of the words "all property," but it is consistent with the California legislature's use of these words in other analogous statutes. In two situations where it is clear that the legislature intended to extend tax lien statutes formerly applicable to real

property to include personal property, the change was affected by striking the word "real" and leaving the phrase "a lien upon all property" in one case and "a lien upon all the property" in the other. *See* Cal.Stats.1957, Ch. 1188, at 2479, amending Cal.Stats.1945, Ch. 566, § 2, at 1103 (codified at Cal.Unemp.Ins. Code § 1703); Cal.Stats.1965, Ch. 863, § 2, at 2464, amending Cal.Stats.1935, Ch. 57, § 14, at 1262 (codified at Cal.Rev. and Tax.Code § 6757). Interpreting "all property" to include personal property is also consistent with Revenue and Taxation Code § 103's definition of "property" as "all matters and things, real, personal, and mixed, capable of private ownership."

The issue is, then, whether the second sentence of § 18882 limits the scope of the lien suggested by the first sentence to real property, or whether it merely defines the characteristics of the lien. Similar tax lien provisions that expressly apply to personal property use words identical to those in the second sentence of § 18882 to describe the nature of the lien on personal property created. *See* Cal.Rev. and Tax.Code §§ 6757; 6757.5; 18882.5; Cal.Unemp.Ins.Code §§ 1703; 1703.5. It is, therefore, most reasonable to conclude that in § 18882, as in these analogous provisions, the words of the second sentence were not meant to prevent the statute from creating a lien on personal property.

It is not inconsistent with this view that in 1969 the legislature enacted Revenue and Taxation Code § 18882.5. As initially enacted, § 18882.5 provided:

> The board may also file a certificate of state tax lien with the Secretary of State pursuant to Chapter 14.5 (commencing with Section 7220) of Division 7 of Title 1 of the Government Code. From the time of the filing of the certificate with the Secretary of State, the amount required to be paid, together with interest and penalty constitutes a lien upon all personal property in the state owned by the person 'or afterwards acquired by him until the certificate of state tax

lien lapses. The lien has the force, effect and priority of a judgment lien.

The legislature's intent in enacting this provision was probably not, as the Referee believed, to extend the tax lien of § 18882 to personal property. At the same time that it enacted § 18882.5, the legislature enacted provisions nearly identical to it, which provide for filing certificates with the Secretary of State in connection with unemployment insurance compensation tax liens and sales and use tax liens. Cal.Unemp.Ins.Code § 1703.5; Cal.Rev. and Tax.Code § 6757.5. Yet, before these new sections were added, both unemployment insurance compensation tax liens and sales use tax liens clearly attached to personal property. *See* Cal.Unemp.Ins.Code § 1703; Cal.Rev. and Tax.Code § 6757. Thus, it is most likely that, as appellant argues, the purpose of the new tax lien provisions was to provide, as an alternative to county-by-county filing, a central filing that would create a lien encompassing all personal property throughout the state. Thus, the enactment of § 18882.5 is not evidence that § 18882 does not create a lien on personal property.

## II.

The second issue is whether a § 18882 tax lien on personal property is valid against one acquiring the rights of a bona fide purchaser, as required by § 67c(1) (B) of the Bankruptcy Act. Although Judge Duniway agrees that the lower court cannot be affirmed for the reasons it relied upon, he nevertheless would uphold the judgment, because, in his view, § 18882 does not create a lien that satisfies § 67c(1)(B). I believe that this conclusion is based upon a failure to properly distinguish between a judgment lien and an execution lien, and therefore, I respectfully dissent.

The difficulty in deciding whether the lien created by § 18882 is valid as against a bona fide purchaser stems from the manner in which the legislature defined the lien. Rather than directly provide what priority it would have, the legislature simply provided

that it would have the "force, effect and priority of a judgment lien." In California a "judgment lien" is that lien defined in California Code of Civil Procedure § 674, which provides, in part:

> An abstract of the judgment or decree of any court of this State . . . may be recorded with the recorder of any county and from such recording the judgment or decree becomes a lien upon all the real property of the judgment debtor. . . .

As the language of § 674 expressly states, this lien encompasses only real property. *See* Summerville v. Stockton Milling Co., 142 Cal. 529, 538, 76 P. 243 (1904); Arnett v. Peterson, 15 Cal. App.3d 170, 173, 92 Cal.Rptr. 913 (1971). This is true whether there is a levy of a writ of execution or not; no provision of California law ever permits that a judgment lien attach to personal property. If a writ of execution is properly levied, however, an *execution lien* will arise. Unlike a judgment lien, an execution lien can encompass "[a]ll goods, chattels, moneys or other property, both real and personal, or any other property." Cal.Code of Civ.Proc. § 688. While, like a judgment lien, an execution lien can issue only after the entry of a judgment, the two liens differ greatly. For example, a judgment lien lasts for ten years, whereas an execution lien generally lasts for only one year. *Compare* Cal.Code of Civ.Proc. § 674 *with id.* § 688. California courts have always carefully distinguished the two liens, *see, e. g.,* Lean v. Givens, 146 Cal. 739, 741, 81 P. 128 (1905), as have commentators. *E. g., compare* 4 B. Witkin, California Procedure 3286 (2d ed. 1971) *with* 5 Id. 3447–48.

Only by erroneously considering an execution lien to be the same thing as a judgment lien is it possible to argue that § 18882 creates a lien that is perfected as against a bona fide purchaser of personal property by levying a writ of execution: Section 18882 creates a lien with the same characteristics as a judgment lien, and a judgment lien is always perfected under California law by

filing. It is a California execution lien that is perfected by levying a writ of execution.

If this distinction is not to be forgotten, § 18882 must be interpreted to mean that a tax lien is created which has the same "force, effect and priority" as compared to other's interests in a delinquent taxpayer's real and personal property that a judgment lien has as compared to other's interests in a judgment debtor's real property. Because a judgment lien is valid as against the rights of a bona fide purchaser, *see* Page v. Rogers, 31 Cal. 293, 312–313 (1866), a tax lien with the same characteristics is also valid as against the rights of a bona fide purchaser.

The California legislature seems to have shared this belief. In other tax lien statutes, where the legislature desired to protect bona fide purchasers of personal property from tax liens with the "force, effect and priority of a judgment lien," it has expressly provided an exemption. *See* Cal.Rev. and Tax.Code §§ 6757; 6757.5; Cal.Unemp.Ins.Code §§ 1701; 1701.5. The omission of this exemption in § 18882 is indicative of a legislative intent that this tax lien would be valid as against a bona fide purchaser.

I, therefore, conclude that the lien created by § 18882 attaches to a delinquent taxpayer's personal property and upon filing it becomes perfected as against one acquiring the rights of a bona fide purchaser. Thus, I would reverse the judgment of the court below.

### On Petition for Rehearing

On Petition for Rehearing California contends that its claimed lien falls within the second proviso of § 67(c)(1)(B) (11 U.S.C. § 107(c)(1)(B)). We conclude that it does not. It was not valid against judgment creditors at the date of bankruptcy. In re Century Vault Co., 3 Cir., 1969, 416 F.2d 1035, 1038 n. 10. State law does not require seizure to "perfect" the lien; rather, seizure is to enforce the lien. In re J. R. Nieves & Co., 1 Cir., 1971, 446 F.2d 188, 194. The proof of

secured claim filed by the Board is not the equivalent of the notice contemplated by the proviso.

Rehearing denied.

ZIRPOLI, J., would grant a rehearing.