**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| In re: | ) | BAP No. CC-14-1429-TaKuD |
| | ) | |
| MAINLINE EQUIPMENT, INC., | ) | Bk. No. 2:12-bk-39746-WB |
| | ) | |
| Debtor. | ) | Adv. No. 2:13-ap-01705-WB |
| _____ | ) | |
| | ) | |
| LOS ANGELES COUNTY TREASURER | ) | |
| AND TAX COLLECTOR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| MAINLINE EQUIPMENT, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on June 18, 2015
at Pasadena, California

Filed – September 30, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia W. Brand, Bankruptcy Judge, Presiding

Appearances:    Barry S. Glaser of Steckbauer Weinhart Jaffe, LLP
                argued for appellant; Vanessa Marie Haberbush of
                Haberbush & Associates, LLP argued for appellee.

Before:  TAYLOR, KURTZ, and DUNN, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

The Los Angeles County Treasurer and Tax Collector ("County") appeals from a bankruptcy court order setting aside its tax liens on personal property located in Los Angeles County. We AFFIRM.

## FACTS[1]

Debtor-in-possession Mainline Equipment, Inc., dba Consolidated Repair Group, failed to pay property taxes assessed by Los Angeles County. As a result, the County recorded certificates of tax liens with the Los Angeles County Recorder in 1993, 2010, and 2012. The filings created broad liens on all personal property owned by Mainline and located in Los Angeles County. See Cal. Rev. & T. Code § 2191.4 ("RTC § 2191.4").[2] The County did not otherwise take action to assert its claims or to obtain liens.

Mainline eventually initiated a chapter 11 case.[3] It scheduled the County as an unsecured creditor and initiated an adversary proceeding seeking to set aside the County's personal

---

[1] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and in the underlying bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[2] RTC § 2191.4 also creates a broad lien on real property located in a county. Mainline, however, did not schedule real property in its bankruptcy case.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

property tax liens under § 544(a)(1) and, as reflected in an amended complaint, § 545(2). Mainline argued that the personal property liens were not perfected against a bona fide purchaser for value, that as a debtor-in-possession it was entitled to assert the rights of a trustee to set aside such liens, and that judgment in its favor was appropriate.

The parties filed cross-motions for summary judgment. Ultimately, the bankruptcy court agreed with Mainline on its § 545(2) claim. On August 19, 2014, it entered a judgment in favor of Mainline and avoided the tax liens under § 545(2).[4] The County timely appealed.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

### ISSUE

Whether the bankruptcy court erred when it avoided the County's liens pursuant to § 545(2).

### STANDARD OF REVIEW

We review the bankruptcy court's legal conclusions, including its interpretation of the Bankruptcy Code, de novo. See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 764 F.3d 1168, 1173 (9th Cir. 2014).

///

///

---

[4] The bankruptcy court also granted judgment to the County on Mainline's § 544(a)(1) claim.

3

The County makes several arguments on appeal; we find none of them persuasive.

**A. The plain language of the relevant statutes makes clear that the liens were not properly perfected as to a good faith purchaser of personal property for value and, thus, were subject to set aside.**

RTC § 2191.4 provides that:

> From the time of filing the certificate for record pursuant to Section 2191.3, the amount required to be paid together with interest and penalty constitutes a lien upon all personal and real property in the county owned by and then assessed to and in the same name as the assessee named in the certificate or acquired by him or her in that name before the lien expires, **except that the lien upon unsecured property[6] shall not be valid against a purchaser for value or encumbrancer without actual knowledge of the lien when he or she acquires his or her interest in the property. The lien has the force, effect, and priority of a judgment lien . . . .**

Emphasis added.

---

[5] On February 2, 2015, a BAP motions panel granted the County's motion to submit letters from other California counties in support of its position on appeal, in lieu of amicus curiae briefs. The County did so, submitting amici letters from the counties of Alameda, Kern, San Diego, Sonoma, and Stanislaus. It also submitted a joinder letter from the California Association of County Treasurers and Tax Collectors. The Association, however, is not a county within the state of California. Thus, we do not consider its letter in lieu of an amicus brief.

[6] RTC § 2191.3 allows for recordation of a tax certificate upon a delinquency in payment of a tax on "[u]nsecured property not secured by a lien on any real property . . . ." Cal. Rev. & T. Code § 2191.3(a)(1)(E). RTC § 2191.4, thus, necessarily includes personal property within the definition of "unsecured property."

4

Thus, RTC § 2191.4 unambiguously provides that the County's tax lien, while valid against Mainline, was not valid as to a third party who subsequently purchased Mainline's personal property in good faith for value.[7]

The relevant statute under the Bankruptcy Code is equally clear. Section 545(2) allows a trustee to set aside a lien that is not properly perfected as to a bona fide purchaser. As a debtor-in-possession who enjoys the rights of a trustee, Mainline could utilize § 545(2). See 11 U.S.C. § 1107. Thus, the unambiguous language of the relevant statutes supports affirmance.

**B. Ninth Circuit authority is consistent with a plain language interpretation of the relevant statutes and supports affirmance.**

In County of Humboldt v. Grover (In re Cummins), 656 F.2d 1262 (9th Cir. 1981), the Ninth Circuit considered the interplay between RTC § 2191.4 and a provision of the Bankruptcy Act analogous to § 545(2). It determined that Humboldt County's personal property tax lien was subject to set aside. Id. at 1265. The facts in Cummins and in the case at hand are virtually identical.

That Cummins was a Bankruptcy Act case is of no moment; the antecedent statutory language is substantively the same as § 545. See Cummins, 656 F.2d at 1263 ("The substance of [§ 67c(1)(B) of the Act] has been carried forward into sections

---

[7] For ease of reference we use the shortened term "bona fide purchaser" hereafter.

5

545(2) and 546(b) of the new Bankruptcy Code."). In such instances, the case law construing a provision of the Bankruptcy Act remains authoritative in interpreting the corollary statute under the Bankruptcy Code. See Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 713 n.4 (9th Cir. BAP 1999). And, RTC § 2191.4 remains unchanged. Thus, the statutes primarily at issue in Cummins either mirror or are the same as those we consider on appeal, and the Cummins plain language analysis supports affirmance.

**C.  Changes in California judgment lien law do not compel reversal.**

The County argues, notwithstanding the plain language of the statutes and the Ninth Circuit authority, that we must determine that proper perfection as to a bona fide purchaser existed or that Mainline, as a debtor-in-possession, was not entitled to rely on § 545(2). We disagree with the County's arguments.

The County does not argue that the transition from the Bankruptcy Act to the Bankruptcy Code is a basis for disregarding Cummins. As previously noted, the statutory language in § 545(2) mirrors the Bankruptcy Act provision considered by the Cummins court.

And the County does not argue that the California statute squarely at issue, RTC § 2191.4, has been modified since the Cummins decision. The California statute analyzed in Cummins remains exactly the same; it continues to state that a recording with a county recorder does not create a lien that is valid against a bona fide purchaser of personal property.

6

Instead, the County argues that because the California legislature enacted a tangentially related statute, California Code of Civil Procedure ("CCP") § 697.510, this necessarily undercuts the Ninth Circuit's decision in Cummins and requires that we disregard the limits on the RTC § 2191.4 lien imposed by the statute itself. Again, we strongly disagree.

**1. The California legislature expanded the ability to obtain a judgment lien on personal property but did not modify RTC § 2191.4.**

In 1982, the California legislature enacted CCP § 697.510 and allowed the creation and perfection of judgment liens on personal property through a filing with the Secretary of State and without levy.[8] See Cal. Code Civ. P. § 697.510(a). This was a logical expansion of judgment creditor rights; under the California Commercial Code, a secured creditor typically perfects a security interest in personal property by filing a document with the Secretary of State, and priority is based on the time of such filings. See Tentative Recommendation Proposing The Enforcement of Judgment Law, 15 Cal. L. Revision

---

[8] The California legislature, however, did not totally do away with the concept of levy. CCP § 699.010, et seq. continue to provide for execution of a judgment through levy. See Cal. Code Civ. P. §§ 697.520 and 699.010, et seq. Further, while a county recording creates a lien on all personal property located within the county, the Secretary of State filing arguably is not so broad. See Cal. Code Civ. P. § 697.530(d) (listing exceptions to attachment). And finally, recordation is not a perfection option available in all instances. A judgment lien may not be created through a Secretary of State filing where the judgment is payable in installments in the future. See Cal. Code Civ. P. § 697.510.

7

Comm'n Reports 2001, 2007, 2045-48 (1980).

The County, however, points to nothing in either case law or relevant legislative history stating or even suggesting any legislative intent to tie enactment of CCP § 697.510 to a change in the interpretation of RTC § 2191.4. Certainly, there was no modification to RTC § 2191.4 itself. Since this is the case, there is nothing to suggest that the plain language analysis in Cummins or the express limitations of RTC § 2191.4 are in any way impacted by this later legislative enactment.

**2. This legislative change does not undercut the binding impact of Cummins.**

The County does not directly challenge the Cummins plain language discussion; it cannot do so as the plain language has not changed. Instead, it focuses on a second aspect of the Cummins decision. The Cummins court found Franchise Tax Board v. Danning (In re Perry), 487 F.2d 84 (9th Cir. 1973), to be controlling on an issue relating to the portion of § 67c(1)(B) now contained in § 546(b). 656 F.2d at 1266. The County argues that as a result of the enactment of CCP § 697.510, the Perry analysis is now questionable and that Cummins, thus, no longer controls. We reject both suggestions.

In Perry, the Ninth Circuit considered California tax statutes that allowed creation of a lien following a failure to pay personal income taxes. The statutes at issue, RTC §§ 18881 and 18882,[9] provided that recordation of a certificate of non-

---

[9] RTC §§ 18881 and 18882 were subsequently repealed by Stats. 1977, ch. 481, p. 1580, § 45, p. 1583, § 47, operative
(continued...)

8

payment with the county recorder created a broad lien on all assets of the taxpayer located in the county. 487 F.2d at 85. It further provided that the lien had the "force, effect, and priority of a judgment lien." Id. These statutes, however, did not expressly discuss the impact of the statutory lien on the claim of a bona fide purchaser of personal property. See id.

The Franchise Tax Board argued that the absence of an express reservation of the rights of bona fide purchasers required a determination that its RTC §§ 18881 and 18882 lien was senior to the claims of a bona fide purchaser and not subject to set aside in bankruptcy. Id. at 86. The Ninth Circuit disagreed; it focused on the fact that, at that time, a personal property judgment lien was not good against a bona fide purchaser in the absence of enforcement by levy. Id. Thus, the county filing created a lien vulnerable to a bona fide purchaser even absent express language in the statute. Id.

The Cummins court did not find Perry controlling on the issue of whether the RTC § 2191.4 lien defeated a bona fide purchaser on the bankruptcy petition date; Humboldt County conceded this issue, and the plain language of the statute compelled this conclusion. 656 F.2d at 1265. Instead, it relied on Perry in determining that Humboldt County could not perfect its lien post-petition through notice to the bankruptcy court. Id. at 1265-66. This issue arose under a portion of the Bankruptcy Act now included in § 546(b). As a result, this

[9](...continued)
July 1, 1978.

9

portion of the Cummins decision is not relevant to the determinations we reach here.

The County did not raise a § 546(b) defense in the summary judgment proceedings and did not raise such a defense in its arguments on appeal. And a review of § 546(b) makes clear that such a defense is not available to the County. RTC § 2191.4 does not create a lien that is effective against a bona fide purchaser who acquired Mainline's assets prior to recordation of the County's tax lien. Thus, § 546(b)(1)(A) does not provide a defense. And this is not a situation involving the maintenance or continuation of a lien, so § 546(b)(1)(B) is also inapplicable. Thus, even if Perry lacks vitality, a determination we do not make, Cummins remains controlling.

**3. Contrary to the County's argument, there are compelling reasons to determine that a filing with the Secretary of State defeats a bona fide purchaser while a filing with a county recorder does not.**

CCP § 697.530, unlike RTC § 2191.4, has no language limiting perfection against a bona fide purchaser. Thus, as the County suggests, a notice of judgment lien filed with the Secretary of State, just like a notice of security interest filed with the Secretary of State, imparts constructive notice of a lien and defeats a bankruptcy trustee's claim based on alleged bona fide purchaser status. The County misses the mark, however, when it then argues that a county recording has or should be deemed to have the same effect.

First, we note, yet again, that the plain language of RTC § 2191.4 states to the contrary. We acknowledge that the

10

statute also has a general statement that it has the force, effect, and priority of a judgment lien, but the express exception to this broad statement is in the narrow circumstance of a bona fide purchaser of personal property. In analyzing a statute, this specific limitation must control over the broader general statement. See San Francisco Taxpayers Ass'n v. Bd. of Supervisors, 2 Cal. 4th 571, 577 (1992).

Second, we emphasize that this plain language interpretation is reasonable. Real property liens of all types are perfected through filings at the county level. Such a filing provides constructive notice of the existence of the lien; purchasers or encumbrancers of real property must search the county records to ascertain whether real property liens exist.

In connection with personal property, however, the situation is completely the opposite. A purchaser (or encumbrancer) of personal property must look to Secretary of State records because it is there that one perfects security interests in personal property through filing. See, e.g., Cal. Com. Code §§ 9310(a), 9501.

Apparently, the California legislature, recognizing that personal property liens were not typically recorded at the county level, determined that it was inappropriate to infer notice to third parties from a county level filing. Here, the statutory language is clear, and the logic behind the statutory scheme is sound.

Finally, we note that a bedrock fact considered in Cummins has not changed; more than a county filing is necessary for

11

perfection that defeats the claims of a bona fide purchaser. At the time of Cummins, it was levy. At this time it is either levy or a Secretary of State filing. Put bluntly, the analysis in Cummins remains sound and continues to control here.

**4. To the extent there is unfairness or difficulty as a result of the RTC § 2191.4 exception for bona fide purchasers, the California legislature must resolve the problem.**

We acknowledge that a county must obtain a money judgment prior to utilizing CCP § 697.510. We take no position regarding the burden litigation would place on the County but note that by virtue of RTC § 3101, et seq., a streamlined procedure appears to be in place to acquire such a judgment. Once a Secretary of State filing is available, such filing would not be unduly oppressive to counties. Filing the notice of judgment lien requires nothing more than filling out a form and mailing it (with a nominal payment) to the Secretary of State. See http://www.sos.ca.gov/business-programs/ucc/forms, Notice of Judgment Lien & Addendum (Form JL1, rev. 06/2001).

We also acknowledge that the current statutory scheme allows the filing of tax liens held at the state level to be filed directly with the Secretary of State. Cal. Gov. Code §§ 7171, 7220. The fact that the California legislature has not allowed counties to take this route may be unfair, but California statutes govern the priority and status of tax liens. See In re Cummins, 656 F.2d at 1264. It is for the California legislature, not the courts, to address any perceived or real unfairness in the statutory scheme.

12

**D.    The legislative history of RTC § 2191.4 does not suggest a different result.**

The County asks that we review the legislative history of RTC § 2191.4 and focus on the fact that it was intended to provide counties with a broad and easily attainable lien. First, where the statutory language is clear and does not lead to an absurd result, we do not look to legislative history. See Lamie v. U.S. Tr., 540 U.S. 526, 536 (2004). Here, the statutory language expressly states that the statute creates a lien on personal property that is not enforceable against a bona fide purchaser; nothing could be clearer and, as noted, this plain language interpretation does not lead to an absurd result.

Even if we consult legislative history, however, it would not compel or even suggest a reversal. RTC § 2191.4 provided the County with an easy way to create a broad lien on both Mainline's real and personal property. The only exception is narrow; only a bona fide purchaser — not the taxpayer itself — can defeat the personal property lien. We do not find the cited legislative history problematic.

## CONCLUSION

Based on the foregoing, we determine that the bankruptcy court correctly set aside the lien, and we AFFIRM.

13