**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE MAINLINE EQUIPMENT, INC., DBA Consolidated Repair Group, *Debtor*, | No. 15-60069 BAP No. 14-1429 |
| LOS ANGELES COUNTY TREASURER & TAX COLLECTOR, *Appellant*, v. MAINLINE EQUIPMENT, INC., *Appellee*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kurtz, Dunn, and Taylor, Bankruptcy Judges, Presiding

Argued and Submitted April 5, 2017
Pasadena, California

Filed July 31, 2017

Before: Kim McLane Wardlaw and Consuelo M. Callahan,
Circuit Judges, and Gordon J. Quist,[*] District Judge.

Opinion by Judge Wardlaw

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

## SUMMARY**

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's affirmance of the bankruptcy court's summary judgment in favor of a debtor in an adversary proceeding seeking avoidance of tax liens on the debtor's personal property.

The panel held that the appeal was not mooted by the disbursement of the debtor's bankruptcy estate and the dismissal of the Chapter 11 case.

The panel held that under 11 U.S.C. § 545(2), the County of Los Angeles could not enforce a lien on the personal property of a Chapter 11 debtor in possession, when the County had failed to perfect the lien as against a bona fide purchaser. The panel concluded that *Cty. of Humboldt v. Grover (In re Cummins)*, 656 F.2d 1262 (9th Cir. 1981), addressing the statutory antecedent to § 545(2), remained good law. The debtor could set aside the County's liens because the liens were statutory and were unenforceable against a hypothetical bona fide purchaser under California law.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Barry S. Glaser (argued), Susan M. Freedman, and Jacquelyn H. Choi, Steckbauer Weinhart LLP, Los Angeles, California, for Appellant.

Vanessa M. Haberbush (argued) and David R. Haberbush, Haberbush & Associates LLP, Long Beach, California, for Appellee.

Walter J. de Lorrell, III, Senior Deputy; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Amici Curiae California State Association of Counties and California Association of County Treasurers and Tax Collectors.

**OPINION**

WARDLAW, Circuit Judge:

May the County of Los Angeles enforce a lien on the personal property of a Chapter 11 debtor in possession, when the County has failed to perfect the lien as against a bona fide purchaser? Under 11 U.S.C. § 545(2), the answer is no, as the Bankruptcy Appellate Panel ("BAP") held in reliance on our decision in *County of Humboldt v. Grover (In re Cummins)*, 656 F.2d 1262 (9th Cir. 1981), which remains good law.

**I.**

Mainline Equipment, Inc., dba Consolidated Repair Group ("Mainline") was in the business of manufacturing,

repairing, and selling cable television equipment. It failed to pay property taxes assessed by the Los Angeles County Treasurer and Tax Collector (the "County") on its personal, or non-real estate, property. In response, the County recorded tax delinquency certificates with the Los Angeles County Recorder in 1993, 2010, and 2012. Pursuant to section 2191.4 of the California Revenue and Taxation Code, the recording of the certificates created broad liens on all of Mainline's property in Los Angeles County. Section 2191.4 provides that "[f]rom the time of filing" tax delinquency certificates, "the amount required to be paid together with interest and penalty constitutes a lien upon all personal and real property in the county" owned by the taxpayer. Though section 2191.4 liens attach to both personal and real property, Mainline owned only personal property during the relevant time period. The County has conceded that it did not record any of its liens with the Secretary of State of California; it argues that it was not required to do so to perfect the liens.

In 2012, Mainline filed a voluntary Chapter 11 bankruptcy petition, scheduling the County as an unsecured creditor. No trustee was appointed, and Mainline administered its estate as a "debtor in possession." It initiated an adversary proceeding to set aside the County's liens on its personal property, maintaining that it had the power to do so under 11 U.S.C. § 545(2). The bankruptcy court granted summary judgment to Mainline because the liens were statutory in nature and, under California law, had not been perfected against a hypothetical bona fide purchaser of

personal property.  Therefore, Mainline was entitled to assert the rights of a trustee to avoid the liens.[1]

In 2015, the BAP affirmed the bankruptcy court's judgment, issuing a published opinion.  *L.A. Cty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip., Inc.)*, 539 B.R. 165 (BAP 9th Cir. 2015).  The BAP found that our decision in *Cummins*, 656 F.2d 1262, controlled the outcome of the case and that our reasoning in that decision remains sound.  In *Cummins*, we held that a bankruptcy trustee could invalidate section 2191.4 liens on personal property under the powers given to a trustee by the statutory antecedent to § 545(2).

After the BAP affirmed, the County appealed.  During its appeal to the BAP in the adversary proceeding, the County sought and received a stay of the Chapter 11 bankruptcy case, to ensure that Mainline's assets would not be fully disbursed before the County's right to those assets was adjudicated.  After the BAP issued its decision, the County sought another stay of the bankruptcy case during its appeal to us.  The BAP denied the motion, allowing the bankruptcy case to move forward.  Mainline's attorneys then filed an application for attorney's fees and costs to be disbursed from Mainline's estate, and a motion to dismiss the bankruptcy case.  On March 9, 2016—while this appeal was pending—the bankruptcy court dismissed the bankruptcy case and authorized payment of attorney's fees and costs from the

---

[1] Mainline also contended that the liens were avoidable under 11 U.S.C. § 544.  The bankruptcy court disagreed and granted judgment to the County on that claim for relief.  Only the § 545(2) claim is at issue here.

available cash, "subject to any disgorgement ordered by the Ninth Circuit" in relation to this appeal.

## II.

We have jurisdiction under 28 U.S.C. § 158(d)(1) to review decisions of the BAP. We review de novo a trustee's avoidance power under 11 U.S.C. § 545(2). *See Saslow v. Andrew (In re Loretto Winery Ltd.)*, 898 F.2d 715, 718 (9th Cir. 1990).

## III.

We reject Mainline's argument that this appeal was mooted by the disbursal of Mainline's bankruptcy estate and dismissal of the Chapter 11 case.

A bankruptcy appeal may become moot in two different ways. First, it may become constitutionally moot if intervening events make it "impossible for the appellate court to fashion effective relief." *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 922 (9th Cir. 2004). Second, the appeal may become equitably moot if the appellants failed to diligently pursue a stay of the bankruptcy case and thus permitted "such a comprehensive change of circumstances to occur as to render it inequitable" to hear the appeal. *Id.* at 923 (quoting *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981)).

This appeal is not constitutionally moot because we can still provide "effective relief" to the County. In its order awarding fees and costs to Mainline's counsel and disbursing the last of Mainline's assets, the bankruptcy court expressly made the payment "subject to any disgorgement" we might

order in this appeal. The bankruptcy court correctly interpreted our caselaw, which provides for an award of such relief. *See id.* (noting that our court could "order the disgorgement of attorney's fees previously paid out of Focus' estate to the [appellees'] attorneys").

Nor is this appeal equitably moot. The County diligently pursued two stays to prevent disbursement of Mainline's remaining assets. In addition, though the bankruptcy case moved forward, there has not been such a "comprehensive change of circumstances" as to render it inequitable for us to hear this appeal. This is not a complex case where it is difficult to unwind the already-completed transactions. "[A]n order compelling disgorgement of [attorney's] fees and expenses [does] not require the bankruptcy court to unravel a complicated bankruptcy plan." *Id.* at 923–24 (second alteration in original) (quoting *S.S. Retail Stores Corp. v. Ekstrom (In re S.S. Retail Stores Corp.)*, 216 F.3d 882, 884 (9th Cir. 2000)). It requires "only that one party disgorge money it has received, money that would then be distributed pursuant to the bankruptcy court's final decree." *Id.* at 924 (quoting *S.S. Retail Stores Corp.*, 216 F.3d at 884).

## IV.

*A. 11 U.S.C. § 545(2) Allows a Chapter 11 Debtor in Possession to Set Aside Liens Against Its Estate.*

After a company files a bankruptcy petition under Chapter 11, it must reorganize its affairs and restore its finances. As a "debtor in possession," it creates a plan to satisfy its debts while retaining control of its business operations and property. *See* W. Homer Drake & Christopher S. Strickland, *Chapter 11 Reorganizations* §§ 1:1, 1:7 (2d ed. 2017). It may

also initiate separate "adversary proceedings" in bankruptcy court—similar to civil lawsuits—to abrogate certain claims on its assets. *See* Fed. R. Bankr. P. 7001; *see also* 8 William L. Norton Jr. & William L. Norton III, *Bankruptcy Law and Practice* § 160:4 (3d ed. 2017). Federal bankruptcy statutes describe claims that may be avoided through an adversary proceeding.

11 U.S.C. § 545(2) is one of those statutes. It affords a debtor in possession the power to invalidate liens on its property, so long as the liens meet certain requirements:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . . is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists . . . .

Section 545(2) expressly applies to a "trustee" and does not mention debtors in possession. However, a debtor in possession has the same powers as a trustee and may invalidate liens pursuant to § 545(2). *See* 11 U.S.C. § 1107(a); *see also* James Lockhart, *Avoidance Under § 545(2) of Bankruptcy Code of 1978*, 154 A.L.R. Fed. 1, § 2(a) (1999).

Certain requirements must be met for the debtor in possession to avoid a lien. First, a debtor in possession may invalidate only statutory liens—liens arising "solely by force of a statute on specified circumstances or conditions." *See* 11 U.S.C. § 101(53)*.* Liens arising out of the common law,

a judicial proceeding, or a contract are not avoidable.  *See* 4 Norton & Norton, *supra* § 64:1.  Second, the lien must fail what we have termed the "hypothetical bona fide purchaser test."  *See Loretto Winery*, 898 F.2d at 718.  Under that test, the bankruptcy court must consider whether the lien would be valid if the debtor sold the subject property to a bona fide purchaser—a purchaser for value, in good faith, and without notice of the lienholder's rights in the property.  *See* Lockhart, *supra* § 12.  If the lien would be valid against such a purchaser, the lien is also valid against the estate.  If not, the lien may be invalidated.  State law governs this analysis.  *See Loretto Winery*, 898 F.2d at 718.

Congress passed § 545(2) to address state-created "disguised priorities" which would "exhaust all of the debtor's estate, leaving little for general creditors." Lockhart, *supra* § 2(a).  Section 545(2) placed restrictions on these "spurious statutory liens" arising under state law to prevent distortion of the federal bankruptcy distribution process.  *Id.* Congress determined that "if the lien created by state law is so tenuous that it can be defeated by transfer of the subject property to a bona fide purchaser, it should not be good against the trustee in bankruptcy."  *Id.*

B.  *Under 11 U.S.C. § 545(2), Mainline May Avoid the County's Liens.*

Section 545(2) allows Mainline to avoid liens that are (1) statutory and (2) unenforceable against a hypothetical bona fide purchaser under California law.  We agree with the

bankruptcy court and the BAP that our decision in *Cummins* controls and that Mainline may set aside the County's liens.**[2]**

1.   The County's Liens Are Statutory.

The Bankruptcy Code defines a statutory lien as one "arising solely by force of a statute on specified circumstances or conditions."  11 U.S.C. § 101(53).

The County filed certificates documenting Mainline's tax delinquency with the Los Angeles County Recorder.  Under California Revenue and Tax Code section 2191.4, by filing those certificates, the County obtained liens "upon all personal and real property in the county" owned by Mainline. Because the County's liens arose "solely by force of statute," they meet § 545(2)'s first requirement for avoidance.

2.   The County's Liens Are Invalid Against a Bona Fide Purchaser.

Section 2191.4 not only created the County's liens but also describes their enforceability.  Therefore, we look to section 2191.4 to determine whether the County's liens are enforceable against a bona fide purchaser.  For purposes of our analysis, we apply California's definition of a bona fide purchaser: one who purchases for "value, in good faith, and without actual or constructive notice of another's rights."

---

**[2]** The County argues that *Cummins* is inapposite because, in that case, Humboldt County conceded that section 2191.4 liens are avoidable under § 545(2).  But did not rely on that concession.  Rather, we analyzed the statutory text and the legislative scheme to reach our decision.  656 F.2d at 1264–65.  Further, though *Cummins* involved the statutory predecessors to § 545(2) and section 2191.4, the statutes at issue here are the same in all material respects.

12 B.E. Witkin et al., *Summary of California Law* § 328 (10th ed. 2016); *see also Gates Rubber Co. v. Ulman*, 214 Cal. App. 3d 356, 364 (1989).

> *a.   The plain language of section 2191.4 establishes that the County's liens are unenforceable against a bona fide purchaser.*

In *Cummins*, we held that section 2191.4 "expressly ma[kes] invalid against a [bona fide purchaser]" personal property liens obtained under the statute. 656 F.2d at 1265; *see also Franchise Tax Bd. v. Danning (In re Perry)*, 487 F.2d 84, 86 (9th Cir. 1973). Section 2191.4 has not materially changed since that decision, and we reject the County's argument that our interpretation of the statute was incorrect.

Section 2191.4 provides in relevant part:

> From the time of filing the certificate for record pursuant to Section 2191.3, the amount required to be paid together with interest and penalty constitutes a lien upon all personal and real property in the county owned by and then assessed to and in the same name as the assessee named in the certificate or acquired by him or her in that name before the lien expires, *except that the lien upon unsecured property shall not be valid against a purchaser for value or encumbrancer without actual knowledge of the lien when he or she acquires his or her interest in the property.* The lien has the force, effect, and priority of a judgment lien and continues for 10 years

> from the time of the recording of the certificate unless sooner released or otherwise discharged. (emphasis added)

The statute expressly provides that liens on personal property are unenforceable against a bona fide purchaser. It states that personal property liens are not "valid against a purchaser for value or encumbrancer *without actual knowledge* of the lien when he or she acquires his or her interest in the property." A bona fide purchaser lacks notice of anyone else's rights in the subject property. Without any notice, a bona fide purchaser necessarily lacks knowledge of another's rights. *Cf.* 12 B.E. Witkin et al., *supra* § 331 ("[A] subsequent purchaser may . . . have actual knowledge or constructive notice . . . and, if so will not be a bona fide purchaser."). Therefore, a bona fide purchaser falls within the statute's exception to the enforceability of personal property liens.[3]

> b. *That section 2191.4 liens generally have the force and effect of judgment liens does not make them enforceable against a bona fide purchaser of personal property.*

The County points out that section 2191.4 provides that liens created by the statute have "the force, effect, and priority of a judgment lien." According to the County, this "judgment lien" provision renders its liens enforceable

---

[3] The County argues that, for purposes of our analysis, the hypothetical bona fide purchaser should be defined as one *with actual knowledge* of another's rights in the subject property. However, that argument runs headlong into California's definition of a bona fide purchaser, which explains that a bona fide purchaser lacks any notice of another's rights in the property.

against a bona fide purchaser.  It relies on the fact that in California *some* judgment liens—those that have been recorded with the Secretary of State—are valid against a bona fide purchaser of personal property.  *See* Cal. Civ. Proc. Code § 697.510.  We reject the County's argument for two reasons.

First, even if the County were correct that, construed by itself, the judgment lien provision suggests that the County's liens are perfected against a bona fide purchaser, its reading of section 2191.4 as a whole is untenable.  "A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates."  *S.F. Taxpayers Ass'n v. Bd. of Supervisors*, 2 Cal. 4th 571, 577 (1992) (quoting *Rose v. State*, 19 Cal. 2d 713, 723–24 (1942)); *see also Fox Ins. Co. v. Ctrs. for Medicare & Medicaid Servs.*, 715 F.3d 1211, 1224 (9th Cir. 2013).  As we discuss above, there is an express exception to the enforceability of liens created by section 2191.4—liens on personal property are not perfected against bona fide purchasers.  That exception must control against the more general judgment lien provision, which applies to both personal and real property.

Second, the County's interpretation of the judgment lien provision is incorrect.  In *Franchise Tax Board v. Danning (In re Perry)*, 487 F.2d 84 (9th Cir. 1973), we were confronted with an identical judgment lien provision in a different tax lien statute.  Judgment liens recorded with the county were perfected against real property, and thus the Tax Board's liens were perfected against real property.  *Id.* However, the Tax Board's liens were *not* perfected against personal property.  *Id.*  To perfect a judgment lien against

personal property, a lienholder had to "go[] further" than recording with the county and "levy[] a warrant for the collection of the tax." *Id.* The Tax Board had not taken those additional steps, and thus its liens were not perfected against personal property. *Id.* Several years later, in *Cummins*, we adopted the same interpretation of section 2191.4's judgment lien provision. 656 F.2d at 1265.

Under *Perry* and *Cummins*, section 2191.4's judgment lien provision did not give the County's liens the same enforceability as any judgment lien. Rather, it gave the County's liens—which were recorded with the county—the validity of a judgment lien *recorded with the county*. Judgment liens recorded with the county are enforceable against real, but not personal, property. *See* Cal. Civ. Proc. Code §§ 697.310, 697.510. Though judgment liens *recorded with the Secretary of State* are enforceable against personal property, the County took no additional steps to perfect its liens beyond recording them with the county.[4]

The County argues that our interpretation of the judgment lien provision in *Perry* and *Cummins* is no longer sound. At the time those cases were decided, judgment liens could be enforced against a bona fide purchaser of personal property only by levying, or seizing, the property. Now, a judgment lien on personal property can be perfected by recording it with the Secretary of State. *See* Cal. Civ. Proc. Code § 697.510. But, as the BAP aptly noted, "[A] bedrock fact considered in [those cases] has not changed; more than a

---

[4] As the BAP recognized, to obtain liens valid against a bona fide purchaser of personal property, the County would have needed to obtain a money judgment against Mainline, and then record the judgment with the Secretary of State.

county filing is necessary for perfection that defeats the claims of a bona fide purchaser." *Mainline Equip.*, 539 B.R. at 171. Therefore, we reaffirm our holding that a county filing, by itself, is insufficient to perfect a lien on personal property against a bona fide purchaser. Our reasoning in *Perry* and *Cummins* is not undercut by the intervening change to California law. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 (2017) ("A clear, authoritative judicial holding on the meaning of a particular provision should not be cast in doubt and subjected to challenge whenever a related though not utterly inconsistent provision is adopted in the same statute or even in an affiliated statute." (quoting A. Scalia & B. Garner, *Reading Law* 331 (2012))).

## V.

The County obtained statutory liens on Mainline's personal property under section 2191.4. That statute expressly provides that liens on personal property are invalid against a bona fide purchaser. Therefore, the BAP and the bankruptcy court correctly concluded that Mainline could avoid the County's liens under § 545(2), and properly relied on our decision in *Cummins*.

**AFFIRMED.**